INTERNATIONAL LONGSHOREMEN'S & WAREHOUSEMEN'S UNION, LOCAL 37 et al. v. BOYD, District Director, Immigration and Naturalization Service.

No. 3384.

United States District Court
W. D. Washington, N. D.
April 10, 1953.

John Caughlan and Siegfried D. Hesse, Seattle, Wash., for petitioners.

J. Charles Dennis, U. S. Atty.; John E. Belcher, Asst. U. S. Atty., Seattle, Wash., John W. Keane, Atty., Immigration and Naturalization Service, Seattle, Wash., for respondent.

Before BONE, Circuit Judge, and BOWEN and LINDBERG, District Judges.

PER CURIAM.

This matter is now before us sitting as a statutory three-judge United States District Court convoked pursuant to the provisions of section 2284, Title 28 U.S.C.

Petitioners seek an injunction against respondent's interpretation and enforcement of section 212(d) (7) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1182(d) (7), and a declaration of rights thereunder.

Jurisdiction of the controversy is asserted under Title 28 U.S.C., §§ 1337, 2201 and 2282.

Under provision of a pretrial order and an amendment thereto entered prior to the hearing of the case all material factual issues were agreed upon and the pleadings passed out of the case.

At the hearing the parties offered no evidence apart from the exhibits identified in and attached to the pretrial order and agreed that the case as submitted presents only issues of law as set forth in the pretrial order.

The parties have agreed in the pretrial order and amendment thereto that the facts, so far as pertinent to the disposition of this case, are set forth in paragraphs II through IX of the "Admitted Facts" as follows:

"II

"The International Longshoremen's and Warehousemen's Union, Local 37, is a voluntary association of over three thousand persons who work every summer in the herring and salmon canneries of Alaska.

"III

"Petitioners Mensalvas and Mangaoang are the president and business agent of said union, respectively, and they, with the union, bring this action on behalf of all members of the union who are aliens and who are lawful permanent residents of the United States.

"IV

"Respondent is the District Director of the Immigration and Naturalization Service, Seattle, Washington, who is charged with the duty of enforcing all laws and regulations regarding immigration into the port of Seattle.

"V

"For many years there has been collective bargaining in the salmon and herring canning industry in Alaska and said union has been for many years a principal bargaining agent in said industries, these collective bargaining agreements governing the terms and conditions of employment and seniority of employment in the various salmon and herring canneries in Alaska.

"VI

"The members of said union collectively own its buildings, equipment and contract rights and enjoy further, because of their membership in said union, numerous other rights such as pensions and insurance.

"VII

"If the members of said union who are lawful permanent resident aliens are excluded upon their return to Seattle from Alaska after the 1953 canning season the above specified contract and property rights will be jeopardized and forfeited. The most recent collective bargaining contract of the union is attached to this order as Petitioners' Exhibit A.

"VIII

"The respondent has concluded that all members of said union who are lawful per-

manent residents of the United States and who go to Alaska from Seattle and return to the continental United States at Seattle will be subject to the provisions of section 212(a) of the Immigration and Nationality Act of 1952 as required by the language of section 212(d) (7) of said Act and pertinent regulations as interpreted by the respondent, John P. Boyd, who, as an enforcement officer, charged with the enforcement of the immigration laws and regulations, would act substantially in the following manner with respect to the enforcement of such laws and regulations:

"Upon the return of a lawful resident alien the respondent would direct Immigration officers to inspect such alien pursuant to the provisions of section 235 of the Act to determine whether said alien belongs to any of the classes enumerated in section 212(a) of said Act. If the examining officer determined that he did not come within the provisions of a class enumerated in section 212 of the Act, the lawful resident alien would be admitted but if, as provided by section 235(b), such alien did not appear to the examining immigration officer at the port of arrival to be clearly and beyond a doubt entitled to land, the said alien would be detained for further inquiry to be conducted by a Special Inquiry Officer. The Special Inquiry Officer would then proceed in the manner provided by section 235(a), the alien having the right of counsel provided by section 292 of the Act, to determine whether such alien be allowed to enter or should be excluded and deported. If the decision of the Special Inquiry Officer is adverse, the alien would have the right of appeal to the Attorney General provided by section 236(b) of the Act. The Attorney General may in his discretion, as provided by section 212(c) of the Act, admit aliens lawfully admitted for permanent residence who temporarily proceed abroad and who are returning to a lawful, unrelinquished domicile of seven consecutive years without regard to the provisions of paragraphs 1 through 25 and paragraphs 30 and 31 of section 212(a). The decision of the Special Inquiry Officer would be final unless reversed on appeal to the Attorney General. The alien would have the further right of

collateral review by habeas corpus proceedings of the Attorney General's decision to determine whether or not the law had been correctly applied and he had been given a fair hearing consistent with the requirements of procedural due process.

"IX

"That Christ Mensalvas, Ernesto Mangaoang, Ponciano Torres, Ramon Tancioco, and Pedro Caborney are all members of the Union who were lawfully admitted to the United States as permanent residents; that respondent is presently seeking, by deportation proceedings, to expel them; that an order or warrant of deportation has been issued in their cases; that administrative appeal and/or judicial review is presently being sought by them; that they all intend to travel to Alaska this summer in pursuance of their employment rights; and that this employment, pursuant to the contract rights specified above, constitutes the source of a substantial portion of their yearly income."

The issues of law as posed in the pretrial order are:

"I

"Does the Court have jurisdiction, in that, is there a present threat by the respondent, other than hypothetical, beyond that implied by the existence of the pertinent laws and regulations to a vested right or status of the petitioners which is entitled to protection against a cause of exclusion proscribed (prescribed) by Congress?

"II

"Whether paragraph (7) of section 212 (d) of the Act applies to lawful permanent residents of the continental United States who travel to Alaska from Seattle and who seek to return therefrom to the continental United States at Seattle; or whether said section applies only to aliens not lawfully admitted to the United States seeking to enter the continental United States at Seattle from Alaska for the first time?

"III

"If the first interpretation is adopted, whether

(a) Congress has the power to classify Alaska as a foreign territory for the purpose of exclusion?

(b) Whether aliens who are lawful permanent residents of the United States may constitutionally be excluded pursuant to said section?"

It is clear that the issues of law here involved concern only aliens and not citizens of the United States by birth or naturalization.

■ Proceeding to the first issue of law, respondent contends that the court is without jurisdiction under Article III, § 2 of the United States Constitution in that the case does not present a justiciable controversy. We do not agree. Borrowing the language of Circuit Judge Clark of the Second Circuit, there can be little question that a suit will lie against a defendant, or respondent such as here, for acting beyond his statutory authority; and the declaratory judgment, together with an enforcing injunction, furnishes a proper device to test the scope of this authority. See U. S. Lines Co. v. Shaughnessy, 2 Cir., 195 F.2d 385; Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 139–140, 71 S.Ct. 624, 95 L.Ed. 817 (and cases therein cited).

■ As to the second question, we think section 212(d) (7) of the Immigration and Nationality Act of 1952 does apply to lawfully admitted aliens who are permanent residents of the continental United States when returning from Alaska to continental United States at Seattle.

■ Section 212(a) of the Immigration and Nationality Act of 1952 in its opening paragraph provides:

"Except as otherwise provided in this Act, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:"

Without question this language, when read with other provisions of the Act, must be interpreted to authorize respondent to exclude aliens such as petitioners if within any of the classes thereafter referred to, in the event such aliens departed from the United States for a foreign land and sought return. The exclusion procedure outlined in sections 235 and 236 of the Act would be applicable to such aliens. Shaughnessy v. U. S. ex rel. Mezei, 345 U.S. 206, 73 S.Ct. 625.

■ The language of Section 212(d) (7) in plain and simple words makes Section 212(a) applicable "to *any alien* who shall leave Hawaii, Alaska, Guam, Puerto Rico, or the Virgin Islands of the United States, and who seeks to enter the continental United States or any other place under the jurisdiction of the United States". We cannot escape the obvious meaning of the language used. The words "any alien" include aliens situated as are those here involved. As stated by Judge Sugarman in United States Lines Co. v. Shaughnessy, 101 F.Supp. 61, at page 64, affirmed, 2 Cir., 195 F.2d 385:

"In arriving at the intent of Congress, the courts are not to speculate as to the possible thoughts which might have been in the minds of the legislators when the statute was enacted. It is not for the court, acting upon conjecture and surmising what may have been the intent of the Congress, to interpolate exceptions in the statute, thus in effect avoiding and nullifying the express declaration of the act. On the contrary, the legislative intent is to be determined primarily from the language used in the act, read in connection with the canons of interpretation and surrounding circumstances. The language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction. Words of ordinary import receive their understood meaning, and technical terms are construed in their special sense. While the literal meaning of the statute may be avoided to effectuate the legislative intent, Congress is presumed to mean what it says, and if there is no ambiguity in the act, it is generally construed according to its plain terms."

The third and final dual question to decide, while posed in two parts, is actually one, namely, has Congress exceeded its con-

stitutional powers in enacting section 212 (d) (7) as this court has now interpreted said section? We think not. We are not dealing here with the question of due process of law but rather with the power of Congress to fix or circumscribe the status of certain aliens who leave a territory of the United States to enter continental United States or other places under the jurisdiction of the United States.

The Supreme Court, in considering the rights of lawfully admitted aliens who were permanent residents of the continental United States, stated in Harisiades v. Shaughnessy, 342 U.S. 580, page 586, 72 S. Ct. 512, at page 517, 96 L.Ed. 586:

"Under our law, the alien in several respects stands on an equal footing with citizens, but in others has never been conceded legal parity with the citizen. Most importantly, to protract this ambiguous status within the country is not his right but is a matter of permission and tolerance. The Government's power to terminate its hospitality has been asserted and sustained by this Court since the question first arose."

The fact that an alien leaving a territory of the United States and seeking entry to continental United States may have but recently and for a long period of time theretofore been a lawfully admitted alien permanently residing in continental United States would not alter or restrict the power of the government to circumscribe his status as an alien.

Congress having the authority to legislate generally on the subject matter before us, in what respect, if any, has that authority here been violated? Congressional wisdom or purpose, as such, is not reviewable by the courts and has no place in the legal issue here involved. Keeping clearly in mind the vast and broad powers of Congress to enact legislation excluding or expelling aliens as balanced against the limited constitutional rights of all aliens, including lawfully admitted resident aliens of continental United States, we cannot hold that that portion of the statute under attack offends or is beyond the constitutional authority vested in Congress even though its provisions make applicable restrictions upon aliens leaving the territories of the United States, including Alaska, and entering or reentering other territories, states or places under United States jurisdiction when not applicable to aliens permanently resident in or traveling within or between the states. Neither are we aware of any constitutional limitation upon the power of Congress which would forbid its classification in the same category, for the purpose of exclusion, lawfully admitted aliens permanently residing in continental United States when seeking reentry into the states from a territory of the United States, and similarly situated aliens seeking reentry to the United States from a foreign land.

The relief sought by petitioners herein is denied and the action is hereby dismissed.