INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION, LOCAL 37, ET AL. *v.* BOYD, DISTRICT DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE.

No. 195. Argued January 6, 1954.—Decided March 8, 1954.

*A. L. Wirin* argued the cause for appellants. With him on the brief was *Norman Leonard.*

*Charles Gordon* argued the cause for appellee. With him on the brief were *Acting Solicitor General Stern, Assistant Attorney General Olney, John F. Davis, Beatrice Rosenberg* and *L. Paul Winings.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This is an action by Local 37 of the International Longshoremen's and Warehousemen's Union and several of its alien members to enjoin the District Director of Immigration and Naturalization at Seattle from so construing § 212 (d)(7) of the Immigration and Nationality

Act of 1952* as to treat aliens domiciled in the continental United States returning from temporary work in Alaska as if they were aliens entering the United States for the first time. Declaratory relief to the same effect is also sought. Since petitioners asserted in the alternative that such a construction of the challenged statute would be unconstitutional, a three-judge district court was convened. The case came before it on stipulated facts and issues of law, from which it appeared that the union has over three thousand members who work every summer in the herring and salmon canneries of Alaska, that some of these are aliens, and that if alien workers going to Alaska for the 1953 canning season were excluded on their return, their "contract and property rights [would] be jeopardized and forfeited." The District Court entertained the suit but dismissed it on the merits. 111 F. Supp. 802. In our order of October 12, 1953, we postponed the question of jurisdiction to the hearing on the merits. 346 U. S. 804.

On this appeal, appellee contends that the District Court should not have reached the statutory and constitutional questions—that it should have dismissed the suit for want of a "case or controversy," for lack of standing on the union's part to bring this action, because the Attorney General was an indispensable party, and because habeas corpus is the exclusive method for judicial inquiry in deportation cases. Since the first objection is conclusive, there is an end of the matter.

Appellants in effect asked the District Court to rule that a statute the sanctions of which had not been set in motion against individuals on whose behalf relief was

---

*This section states that the exclusionary provisions of § 212 (a) shall, with exceptions not here relevant, "be applicable to any alien who shall leave Hawaii, Alaska, Guam, Puerto Rico, or the Virgin Islands of the United States, and who seeks to enter the continental United States . . . ." 8 U. S. C. § 1182 (d)(7).

sought, because an occasion for doing so had not arisen, would not be applied to them if in the future such a contingency should arise. That is not a lawsuit to enforce a right; it is an endeavor to obtain a court's assurance that a statute does not govern hypothetical situations that may or may not make the challenged statute applicable. Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function. *United Public Workers* v. *Mitchell,* 330 U. S. 75; see *Muskrat* v. *United States,* 219 U. S. 346, and *Alabama State Federation of Labor* v. *McAdory,* 325 U. S. 450. Since we do not have on the record before us a controversy appropriate for adjudication, the judgment of the District Court must be vacated, with directions to dismiss the complaint.

*It is so ordered.*

MR. JUSTICE BLACK, with whom MR. JUSTICE DOUGLAS concurs, dissenting.

This looks to me like the very kind of "case or controversy" courts should decide. With the abstract principles of law relied on by the majority for dismissing the case, I am not in disagreement. Of course federal courts do not pass on the meaning or constitutionality of statutes as they might be thought to govern mere "hypothetical situations . . . ." Nor should courts entertain such statutory challenges on behalf of persons upon whom adverse statutory effects are "too remote and abstract an inquiry for the proper exercise of the judicial function." But as I read the record it shows that judicial action is absolutely essential to save a large group of wage earners on whose behalf this action is brought from irreparable harm due to alleged lawless enforcement of a federal statute. My view makes it necessary for me to set out the facts

with a little more detail than they appear in the Court's opinion.

Every summer members of the appellant union go from the west coast of continental United States to Alaska to work in salmon and herring canneries under collective-bargaining agreements. As the 1953 canning season approached the union and its members looked forward to this Alaska employment. A troublesome question arose, however, on account of the Immigration and Nationality Act of 1952, 66 Stat. 163. Section 212 (d)(7) of this new Act has language that given one construction provides that all aliens seeking admission to continental United States from Alaska, even those previously accepted as permanent United States residents, shall be examined as if entering from a foreign country with a view to excluding them on any of the many grounds applicable to aliens generally. This new law created an acute problem for the union and its numerous members who were lawful alien residents, since aliens generally can be excluded from this country for many reasons which would not justify deporting aliens lawfully residing here. The union and its members insisted on another construction. They denied that Congress intended to require alien workers to forfeit their right to live in this country for no reason at all except that they went to Alaska, territory of the United States, to engage in lawful work under a lawfully authorized collective-bargaining contract. The defendant immigration officer announced that the union's interpretation was wrong and that workers going to Alaska would be subject to examination and exclusion. This is the controversy.

It was to test the right of the immigration officer to apply § 212 (d)(7) to make these workers subject to exclusion that this suit was filed by the union and two of its officers on behalf of themselves and all union members who are aliens and permanent residents. True, the action

was begun before the union members went to Alaska for the 1953 canning season. But it is not only admitted that the immigration official intended to enforce § 212 (d)(7) as the union and these workers feared. It is admitted here that he has since done precisely that. All 1953 alien cannery workers have actually been subjected to the wearisome routine of immigration procedure as though they had never lived here. And some of the union members are evidently about to be denied the right ever to return to their homes on grounds that could not have been legally applied to them had they stayed in California or Washington instead of going to Alaska to work for an important American industry.

Thus the threatened injury which the Court dismisses as "remote" and "hypothetical" has come about. For going to Alaska to engage in honest employment many of these workers may lose the home this country once afforded them. This is a strange penalty to put on productive work. Maybe this is what Congress meant by passing § 212 (d)(7). And maybe in these times such a law would be held constitutional. But even so, can it be that a challenge to this law on behalf of those whom it hits the hardest is so frivolous that it should be dismissed for want of a controversy that courts should decide? Workers threatened with irreparable damages, like others, should have their cases tried.