272 F.2d 90
 TIMES FILM CORPORATION, a New York corporation, Plaintiff-Appellant,
v.
CITY OF CHICAGO, a municipal corporation, Richard J. Daley, its mayor, and Timothy J. O'Connor, its police commissioner, Defendants-Appellees.
 No. 12717.
 United States Court of Appeals Seventh Circuit.
 November 27, 1959.
 
 Felix J. Bilgrey, New York City, Abner J. Mikva, Robert Plotkin, Chicago, Ill., for plaintiff-appellant.
 John C. Melaniphy, Corp. Counsel, Robert J. Collins, Asst. Corp. Counsel, Chicago, Ill., (Sydney R. Drebin, Asst. Corp. Counsel, Chicago, Ill., of counsel), for appellee.
 Before HASTINGS, Chief Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 From a judgment for defendants, The City of Chicago, a municipal corporation, Richard J. Daley, its mayor, and Timothy J. O'Connor, its police commissioner, dismissing the plaintiff's cause, the latter has appealed.
 
 
 2
 By its complaint, plaintiff sought an order from the district court commanding defendants to forthwith issue to plaintiff the permit required by the city's ordinance, known as §§ 155-1 to 155-7 of the Municipal Code of the City of Chicago, alleging that it applied to O'Connor for a permit to exhibit a motion picture film entitled "Don Juan", but that he did not issue the permit on the ground that such a permit shall be granted only after such film had been produced at his office for examination; that an appeal to defendant Daley proved unsuccessful, and that, without a permit, plaintiff is prohibited from exhibiting said film under penalty of arrest and criminal prosecution, all in denial of plaintiff's rights under the first and fourteenth amendments to the constitution of the United States.
 
 
 3
 The defendants having answered the complaint, and the facts having been stipulated, the court entered the judgment from which the appeal was taken.
 
 
 4
 § 155-1 of the ordinance provides:
 
 
 5
 "It shall be unlawful for any person to show or exhibit in a public place, or in a place where the public is admitted, anywhere in the city any picture * * * without first having secured a permit therefor from the commissioner of police.
 
 
 6
 * * * * * *
 
 
 7
 "Any person exhibiting any picture or series of pictures without a permit having been obtained therefor shall be fined not less than fifty dollars nor more than one hundred dollars for each offense. * * *"
 
 
 8
 § 155-4 of said ordinance reads:
 
 
 9
 "If a picture or series of pictures, for the showing or exhibition of which an application for a permit is made, is immoral or obscene, or portrays depravity, criminality, or lack of virtue of a class of citizens of any race, color, creed, or religion and exposes them to contempt, derision, or obloquy, or tends to produce a breach of the peace or riots, or purports to represent any hanging, lynching, or burning of a human being, it shall be the duty of the commissioner of police to refuse such permit; otherwise it shall be his duty to grant such permit.
 
 
 10
 * * * * * *"
 
 
 11
 In its complaint, plaintiff has limited its statement of the facts in an obvious attempt to so frame its case that the United States Supreme Court will be persuaded to rule upon the question of constitutionality of motion picture censorship, a course from which, according to Mr. Justice Harlan, Kingsley International Pictures Corp. v. Regents of U. of N. Y., 360 U.S. 684, 708, 79 S.Ct. 1362, 3 L.Ed.2d 1512, the Court has carefully abstained. In plaintiff's paring down of the facts, however, it has reduced the case to an abstract question of law. It is fundamental that, while the courts will adjudicate controversies, they will not announce opinions where concrete issues in actual cases are not set forth. In United Public Workers etc. v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754, the court said:
 
 
 12
 "As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues, `concrete legal issues, presented in actual cases, not abstractions' are requisite. * * *"
 
 
 13
 The subject matter involved in this case is, according to the complaint, a moving picture film, which is described in no way except as "Don Juan". The nature of its contents either generally or specifically, is not revealed by the complaint and is not alleged to have been made known to defendants. The film itself was not tendered to the district court or this court and is not in the record. No one, except those in privity with plaintiff, knows whether the film Don Juan, for which the protection, first of this court, and eventually of the United States Supreme Court, is sought, is a picture of (for instance) a happy Sunday School picnic, a bullfight, or any one of the following (inter alia): (a) an immoral or obscene act, (b) exposure of the citizens of any race, color, creed or religion to contempt, derision or obloquy by attributing to them depravity, criminality or lack of virtue, (c) acts tending to produce a breach of the peace or riots, or (d) a hanging, lynching, or burning of a human being. With the physical object constituting the subject matter of this complaint hidden from the court, we are left to guess as to what our holding is to apply. If we grant the relief prayed, we will be sanctioning the public exhibition of we know not what. It might be a portrayal of a school of crime, which, for instance, teaches the steps to be taken in successfully carrying out an assassination of a president of the United States as he leaves the White House; or shows how to arrange an uprising of subversive groups in one of our cities.
 
 
 14
 Although plaintiff, evidently for strategic purposes, refuses to take a stand which will reveal the contents of the film, certain arguments in its brief point strongly to the fact that the film is one subject to a charge of obscenity. Most of the cases cited by it involve that charge. Specifically, plaintiff refers to Times Film Corp. v. City of Chicago, 7 Cir., 244 F.2d 432, where we considered a film charged to be obscene. The brief of counsel for the plaintiff in the case at bar quotes at great length from the report of a master in chancery in that case, only a small part of which we set forth below:
 
 
 15
 "At least it cannot be concluded that, for the purposes of limiting the basic constitutional protection to freedom of expression, arousal of sexual desires in normal persons is in the same category as danger to the nation at war, or incitements to riots and acts of violence, or to the overthrow by force of orderly government, or even with expressions which have the effects of force."
 
 
 16
 The same ordinance is involved in both that case and this. We may fairly infer that, in plaintiff's opinion, obscenity is in the same category, for present purposes, with incitement to riots.
 
 
 17
 We recognize that there may be differences of opinion as to whether a film, if it tends to produce a breach of the peace or riots, is entitled to be shown in a theater repeatedly as long as the theater manager is willing to post appearance bonds following repeated arrests for violation of the criminal sections of the ordinance, or whether such a showing of the film should await its approval by a censorship board. But those differences should be resolved by a court having possession of the full facts, none of which is more relevant than the film itself. We would not emulate the play of Hamlet without Hamlet. Without the film before the court, we are presented with a hypothetical case in which even the hypothesis is incomplete. We are being asked to adjudicate an abstract question of law, based upon an incomplete skeleton of facts. Without knowledge of the film's contents, the district court and we are not in a position to determine whether plaintiff has a right to exhibit its film without city censorship.
 
 
 18
 In International Longshoremen's Union etc. v. Boyd, 347 U.S. 222, at page 224, 74 S.Ct. 447, at page 448, 98 L.Ed. 650, the court said:
 
 
 19
 "* * * That is not a lawsuit to enforce a right; it is an endeavor to obtain a court's assurance that a statute does not govern hypothetical situations that may or may not make the challenged statute applicable. Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function. United Public Workers etc. v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754; see Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246, and Alabama State Federation of Labor etc. v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725. Since we do not have on the record before us a controversy appropriate for adjudication, the judgment of the District Court must be vacated, with directions to dismiss the complaint."
 
 
 20
 Plaintiff makes clear its contention that "the city's power is limited to punishment after the fact, just as it is in other areas of criminal law." If that contention is correct, thus barring censorship before a film is exhibited in public theaters, actual prior restraint will scarcely exist as to the exhibition of a film in theaters. While it is common knowledge that the responsible owners of newspapers and television broadcasting systems respectively exercise a wholesome, voluntary censorship over newspapers and television, no similar regulation of the exhibition of moving picture films in theaters is as effectively exercised by private industry. The arrest and prosecution of employees of theaters who exhibit films charged with obscenity, inciting to riot, and the other proscriptions mentioned in the ordinance under consideration, is at most a theoretical remedy of prevention. It would be practically ineffectual, especially in this case. Plaintiff, owner of the film, is a New York corporation, having its place of business in New York City. It does not appear that it has any headquarters in Illinois. A criminal prosecution against the operator of the projector showing the film in a theater in Chicago, or against some other employee of the theater, would be practically doomed to failure as a means of stopping the showing of the film. Even if such a prosecution finally culminated in a conviction, in the meantime the damage caused by the showing of the film would have been done. A film which incites a riot produces that result almost immediately after it is shown publicly. Likewise, the effect upon the prurient mind of an obscene film may result harmfully to some third person within hours after the film has been shown. These are disadvantages of the doctrine of limiting the power of the city to punishment after the fact, for which plaintiff contends.
 
 
 21
 We have briefly referred to some of the considerations which bear upon the abstract question presented by plaintiff. The film not being before the court, no hypotheses will be assumed to apply to its contents. For the reasons hereinbefore set forth, the judgment of the district court is affirmed.
 
 
 22
 Judgment affirmed.