**INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UN-ION, Plaintiff,**

v.

**The PAY BOARD and George B. Boldt, Individually and as Chairman of the Pay Board, Defendants.**

**No. C-72 675 ACW.**

United States District Court,
N. D. California.

May 3, 1972.

Richard Gladstein, Gladstein, Leonard, Patsey & Andersen, San Francisco, Cal., for plaintiff.

James L. Browning, Jr., U. S. Atty., with William B. Spohn, Asst. U. S. Atty., San Francisco, Cal., E. Grey Lewis, William E. Nelson, Edward A. Lenz, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

WOLLENBERG, District Judge.

This action assertedly arises under the Economic Stabilization Act of 1970, as amended. The plaintiff is a labor organization, and as such clearly enabled to bring this action by reason of the provisions of § 210(a) of the Act. The defendant Pay Board is an agency of the United States government, created by the provisions of Executive Order 11627, and continued in existence by Executive Order 11640, both promulgated under the authority granted the President by the Act. The defendant George Boldt is the Chairman of the Pay Board, and sued in his official and individual capacity.

The complaint seeks both injunctive and declaratory relief. At the time of its filing, the plaintiff sought issuance of an Order to Show Cause, directed to the defendants. The requested order was issued, and pursuant to it, the matter came on for hearing on May 2, 1972.

The Order to Show Cause directed the defendant to respond to plaintiff's application for

"a temporary order enjoining the defendant PAY BOARD and the defendant BOLDT from giving effect to any orders, directions, advices or information to Pacific Maritime Association that the latter may not escrow any wages funds or portions thereof . . . ."

The briefs filed by both parties reflected an understanding that the issue raised was preliminary injunctive relief.

At the time of the hearing, however, plaintiff's counsel made it clear that he was no longer seeking injunctive relief, but only a declaratory judgment. Throughout the course of the hearing, the exact substance of the declaratory relief sought was changed and modified. At the Court's suggestion, plaintiff's counsel finally presented the request in the form of a proposed order.

From the briefs and affidavits filed, and the representations of counsel at the hearing, sufficient factual background to understand the issues presented emerges. After a crippling strike of some 134 days, the plaintiff [ILWU] and the employers' organization, the Pacific Maritime Association, [PMA], reached an agreement covering wages and terms and conditions of employment on the West Coast for longshoremen and ships clerks. Pursuant to law and the applicable regulations, the agreement was submitted to the defendant Pay Board for approval. The agreement was approved in part and rejected in part. A motion for reconsideration of that decision was subsequently made by the

PMA, and that motion has not as yet been decided by the defendant Board.

The ILWU, also subsequent to the Pay Board's disapproval, proposed to the PMA that the wages, payment of which was disapproved by the defendant Board, be placed instead by the employers into an "escrow fund" to be held until such time as they might be legally paid to the employees under the terms of the collective bargaining agreement entered into by the ILWU and the PMA. Not altogether surprisingly, the President of the PMA, Edmund J. Flynn, contacted an official of the defendant Board with a view to learning, if possible, the views which the Pay Board might have on such an arrangement. In due course, Mr. Flynn was notified by means of a telephone call, that the General Counsel of the Pay Board was of the opinion that such an escrow arrangement would have to be submitted to the Board, and that it might constitute a violation of the law if put into effect. The ground for the advice was that the escrow arrangement would constitute a means for an accrual of wages, and thus be subject to control.

■ The plaintiff asserts that Mr. Flynn, on behalf of the PMA, has refused to even bargain with the plaintiff on the escrow arrangement, much less put it into effect, and bases his position solely on the advice received. The preliminary relief originally applied for would have mandatorily enjoined the defendant Board to retract the advice given. The declaratory relief finally sought by plaintiff would simply find that such advices ". . . do not prohibit the [ILWU] and the [PMA] from negotiating for and reaching agreement upon the creation of an escrow . . . such agreement . . . to be subject to all applicable provisions of law."

The modification in plaintiff's position on relief presently sought is substantial; unfortunately, the modifications do nothing which would alter the validity of the objections which the defendants have made to those requests. It is defendants' position that there is simply no justiciable case or controversy before the Court over which it can assert subject matter jurisdiction in that the action of the Board's employee is not ripe for judicial review. The defendants point out that when the Pay Board (as distinguished from one of its employees) acts, that it does so by order and decision in writing. The advice rendered by the defendant Board's employee was not final action of the Board, nor in fact any action of the Board at all. It is only from Board action, final in character, that recourse may be had to a District Court. Alternatively viewed, the plaintiff, defendants contend, has failed to exhaust its administrative remedies, for they are entitled to an authoritative determination of the Pay Board if and when the issue of the escrow arrangement is properly presented to it.

The plaintiff does not seriously challenge the principles of exhaustion of administrative remedy or the requirement of ripeness raised by defendants. Rather, plaintiff argues that the advice given to Mr. Flynn should be treated by this Court as final agency action *because* Mr. Flynn has chosen, he says, to so construe it. The plaintiff assures the Court that its determination, and its determination alone, that negotiation and bargaining would be legal would effectively serve to dissuade Mr. Flynn, who, of course, is not a party to this litigation, from continuing to refuse to negotiate.[1]

There is *no basis for* this Court's acting either by injunction or declaratory

---

1. It is of more than passing interest to note that counsel for the Pay Board candidly acknowledges that there is nothing in the law or the regulations, and specifically in the provisions of 6 C.F.R. § 201.17, as most recently amended by 37 Fed.Reg. 4899 (March 7, 1972), which would bar such negotiations or bargaining. Plaintiff's counsel is, of course, of the same opinion. The Court has no

judgment. Informal advice by an employee of the Pay Board cannot be converted into final agency action by a decision of an individual to so treat it, and that must be so whatever his reasons may be, and whatever his connection to the litigation or lack thereof may be.

The declaratory relief sought by the plaintiff, however, does not even bear on the subject of that informal advice. Instead, the plaintiff wants this Court to tell it, the Pay Board, and the PMA that there is nothing illegal in negotiating and bargaining with respect to an escrow arrangement. Even plaintiff does not suggest that anyone associated with the Pay Board, however humble his station, has ever indicated, however informally or tentatively, that such negotiation and bargaining could violate the law. It goes without saying, therefore, that no one has been threatened with the prospect of prosecution for such activity. Understandably, plaintiff cites no authority whatsoever in support of its proposition that this Court is authorized to rule on so completely an abstract question. The Court's own research has failed to disclose any such authority. On the contrary, defendants have cited authority which is completely persuasive on these facts. See, International Longshoremen's and Warehousemen's Union, Local 37 v. Boyd, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954); United Public Workers of America v. Mitchell, 330 U. S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). This case does not require the Court to go nearly as far as either of those two decisions might suggest, for there is here not the slightest hint of finality, or imminency of harm. Under a liberal view of the question, there are the most cogent reasons for allowing the agency to make a decision, to take a definite position, on the matter without interference by this Court. Cf. Davis, Administrative Law, § 21.08 (1958), and the 1970 Supplement thereto.

The plaintiff urges this Court to be practical in its analysis, and argues that a telephone call from a government official can, and in this case did, have as much impact as a formally drawn order of the Pay Board. In practical and realistic terms, the advice given could reasonably be understood as suggesting that the Pay Board might not approve an escrow arrangement, if and when the issue was presented for decision. Further, that knowledge of what might come to pass could have a discouraging effect on those seeking approval of such an arrangement. That knowledge might even convince the ILWU or the PMA that negotiations and agreement on the matter might turn out to be wasted motion. In practical and realistic terms, it is perfectly clear, and plaintiff makes no contrary claim, that the parties are not thereby forced into any dilemma; by going ahead they expose themselves to no serious threat of harm, but rather are perfectly free to test the arrangement which may be agreed upon and have its legality determined authoritatively before any act is done in reliance upon it. All courses of action are open both to the PMA and the ILWU; action by this Court could not change that fact in either a practical or in a legal sense, if there be some valid distinction between the two.

■ Having determined that the relief sought by the plaintiff on the Order to Show Cause must be denied, it remains to be decided whether or not the entire case is in a posture appropriate for final disposition. An examination of the complaint would lead to the con-

---

reason at all to question that the law is as counsel agree it is on this point, and if their position is well-taken, it is somewhat difficult for the Court to understand why anyone would continue to maintain the opposite position, particularly if based

solely on the telephone advice described above. If would seem that another telephone call by either the PMA or the ILWU might clarify the matter and resolve the difficulty.

clusion that the claim made for injunctive relief has now been entirely abandoned and that plaintiff has submitted his entire case for declaratory relief. The declaratory relief sought would not seem in any sense to be to preserve the status quo pending a decision, but would in its nature be final. The conclusion would seem to be that an order of dismissal pursuant to Rule 12(b) F.R.Civ. P. could now be made. The brief filed by plaintiffs, however, seems to indicate that other issues are intended to be presented at the trial on this matter. In light of those representations, plaintiff may have been seeking something in the nature of a partial summary judgment now, while leaving other issues open for later resolution. It will be assumed that plaintiff does desire to go forward, and dismissal will not be ordered. It would be expected that plaintiff will proceed expeditiously on the remaining issues which it wishes to raise, failing which the defendants may renotice their motion to dismiss.

It is ordered that the relief sought by plaintiffs should be and is hereby denied.

