Mrs. B. J. GAILLOT, Jr., Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, Defendants-Appellees.

No. 71-2805

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

July 27, 1972.

Mrs. B. J. Gaillot, Jr., pro se.

Gerald J. Gallinghouse, U. S. Atty., Mary W. Cazalas, Michaelle F. Pitard, Asst. U. S. Attys., New Orleans, La., C. J. Aucoin, Jr., Asst. U. S. Atty., for the United States.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

PER CURIAM:

While perusing the August 3, 1969 edition of the New Orleans Times-Picayune Mrs. B. J. Gaillot, Jr. discovered that the Department of Health, Educa-

---

* [black] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

tion and Welfare had adopted a policy of denying Federal financial assistance to State hospitals if they continued to classify blood according to the race of the donor.[1] Acting as her own attorney she then instituted a declaratory judgment action in the District Court, contending that the HEW policy was manifestly inconsistent with the disclosure of racial information required by the United States Bureau of Census and constituted a denial of her rights under the First Amendment because her religious convictions did not permit her to accept a transfusion of blood from a person of another race. The District Court dismissed the complaint. We affirm.

Since Mrs. Gaillot is not a lawyer she was probably unaware when she filed her suit that Federal courts traditionally have declined to decide questions of potentially constitutional significance—or, for that matter, questions of any other sort—unless they arise from a "case or controversy" within the meaning of Article III of the United States Constitution. A "controversy" in this sense involves considerably more than mere abstract philosophical disagreement with the wisdom, propriety or desirability of specific governmental activities, necessitating a judicial opinion "advising what the law would be upon a hypothetical state of facts." Aetna Life Insurance Co. v. Haworth, 1937, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617, 621; Nashville, Chattanooga, & St. Louis Railway v. Wallace, 1933, 288 U.S. 249, 262, 53 S.Ct. 345, 347, 77 L.Ed. 730, 735; Byers v. Byers, 5 Cir., 1958, 254 F.2d 205, 208. As a corollary proposition, a party seeking relief must establish his interest in the outcome of the litigation by demonstrating actual or immediately threatened interference with his legal rights, rather than some speculative future adversity that may never materialize. Poe v. Ullman, 1961, 367 U.S. 497, 504, 81 S.Ct. 1752, 1756, 6 L.Ed.2d 989, 996; Interna-

tional Longshoremen's and Warehousemen's Union v. Boyd, 1954, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650.

The purported conflict between the policies of HEW and the Census Bureau has no perceptible impact on Mrs. Gaillot's interests. Essentially her claim is that *if* in the future she should suffer injury or disease requiring a blood transfusion and *if* the only available blood supply is from a State hospital which has elected to comply with the HEW policy (rather than from private sources not subject to the requirement), she *may* be involuntarily subjected to a procedure which *might* offend her religious sensibilities *if* the blood given her comes from a person of a different race. Since claims involving such hypothetical contingencies have never provided a proper foundation for constitutional adjudication, we conclude that the District Court correctly declined "to make existing controversies out of presently academic differences." American Fidelity & Casualty Co. v. United States Fidelity & Guaranty Co., 5 Cir., 1962, 305 F.2d 633, 638 (concurring opinion).

Affirmed.

---

1. The Department's authority was derived from Title VI of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d et seq., and the regulations promulgated under it, 45 C.F.R. § 80.1 et seq. (1969).