Erland E. **COOMBS** and Jeffrey T. Coombs, d/b/a Coombs Construction of the Town of Wells, York County, State of Maine, Plaintiffs,

v.

The **TOWN OF OGUNQUIT**, a Maine Municipal Corporation, and Bradford Sterl, Selectman, Town of Ogunquit, in his individual and official capacity, and Howard Littlefield, Selectman, Town of Ogunquit, in his individual and official capacity, and Kenneth Young, Sr., Selectman, Town of Ogunquit, in his individual and official capacity, and John Miller, Selectman, Town of Ogunquit, in his individual and official capacity, and William Hancock, III, Selectman, Town of Ogunquit, in his individual and official capacity, Defendants.

Civ. No. 83–0465 P.

United States District Court, D. Maine.

Jan. 26, 1984.

---

Sheila J. Fine, Fine & Cohen, P.A., Ogunquit, Maine, for plaintiffs.

E. Stephen Murray, Murray, Plumb & Murray, Portland, Maine, for defendants.

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

GENE CARTER, District Judge.

This is an action brought pursuant to Title 42 U.S.C. § 1983 (1981) seeking enforcement of claimed rights based upon the Fifth and Fourteenth Amendments of the United States Constitution, alleging a restraint of trade and commerce, in violation of Plaintiffs' rights under the Commerce Clause of the Federal Constitution, Article I, § 8; and, under the Court's *pendant* jurisdiction, violations of 10 M.R.S.A. § 1101 (1980)[1] and § 1104 (1983).[2] The

---

1. The statutory provision reads as follows:

Every contract, combination in the form of trusts or otherwise, or conspiracy, in restraint of trade or commerce in this State is declared to be illegal; provided that no association or corporation organized for the sole purpose of marketing, producing or trucking pulpwood or saw logs, the members of or stockholders in which are actually engaged in the production of such products or selling, cutting or trucking the same shall be deemed to be a conspiracy or a combination or in restraint of trade or an attempt to lessen competition or to fix prices arbitrarily; nor shall the marketing contracts and agreements between such association or corporation and its members or stockholders be considered illegal as such or in unlawful restraint of trade or as part of a conspiracy or combination to accomplish an improper or illegal purpose. Whoever shall make any such contract or engage in any such combination or conspiracy shall be guilty of a Class C crime.

2. The statutory provision reads as follows:

Any person, including the State or any political subdivision thereof, injured in its business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by sections 1101 and 1102 or section 1102–A, may sue therefor in a civil action and shall recover 3-fold the damages sustained and costs of suit, including necessary and reasonable investigative costs, reasonable expert's fees and a reasonable attorney fee.

The Attorney General may institute proceedings in equity to prevent and restrain violations of sections 1101, 1102 and 1102–A. These proceedings may be by way of petitions setting forth the case and praying that the violation shall be enjoined or otherwise prohibited. When the parties complained of shall have been duly notified of that petition, the court shall proceed as soon as may be, to the hearing and determination of the case. Pending the petition and before final decree, the court may at any time make such temporary restraining order or prohibition as shall be deemed just under the circumstances.

Plaintiffs seek from this Court "a temporary restraining order requiring the Code Enforcement Officer to accept Plaintiffs['] application immediately and to process that application before the Planning Board as soon as possible." Complaint at 7. A Motion for Temporary Restraining Order was filed with the Complaint. That motion was the subject of hearing and oral argument on January 18, 1984, at which time counsel were heard. Counsel for the parties had submitted prior thereto written memoranda of law on the issues raised by that motion.

The Complaint alleges that the Plaintiffs are residents of the Town of Wells, Maine and that they engage in the general contracting business in the southern York County area, which includes the Town of Ogunquit, Maine. It is asserted that the Plaintiff, Erland E. Coombs, has been so engaged for over thirty years. The affidavit of Erland E. Coombs supporting the motion for temporary restraining order sets out that he has been a general building contractor in southern York County for approximately thirty-eight years and that his son has been associated with him in that business for five years under the name of "Coombs Construction."

The affidavit further recites that on July 1, 1983, Erland E. Coombs was granted "an exclusive and irrevocable option to purchase ... [certain] property [located in Ogunquit] for the purpose of building a motel project for the 1984 tourist season. This option expires on February 1, 1984." It is stated in the affidavit that after the granting of the option, the Plaintiffs went forward with preparation of plans for the motel project. The affidavit sets out facts establishing that on or about August 6, 1983, the Board of Selectmen of the Town of Ogunquit enacted an ordinance imposing a moratorium on further development within the Town of Ogunquit for a period of one hundred twenty days and that the mor-

atorium has subsequently been extended by action of a special town meeting on December 6, 1983. The affidavit asserts,

"[i]f we cannot begin the application process until March of 1984 we could not possibly complete construction for the 1984 season even if the moratorium is declared invalid. If no application is accepted until March of 1984 we could not possibly rely on a pending application to protect us from zoning changes presented and passed at the March, 1984 meeting that might preclude the project."

Erland E. Coombs affidavit at ¶ 14. The allegations of the verified complaint set out the actions of Town officials in respect to the enactment and implementation of the moratorium on further development within the Town of Ogunquit from August 6, 1983, through March 3, 1984, as extended.

As Plaintiffs' counsel states in the memorandum in support of the motion for temporary restraining order, the "[p]laintiffs are asking this Court to require the defendants to do a positive act, to wit: to accept and process their application for a commercial building permit pursuant to 30 M.R.S.A. Section 4956 (1983) [3] and the municipal zoning ordinance and subdivision control standards in spite of the local moratorium ordinance prohibiting those acts." Plaintiffs' memorandum at 7. Yet, the record in this case does not disclose any affirmative assertion by the Plaintiffs that any such application has ever been submitted to any agency of the Town of Ogunquit, either before or since the original moratorium on future development was enacted and extended to March 3, 1984. Plaintiffs' counsel stated at oral argument that no such application was then pending before the Board and that none had ever been made.

These latter facts raise serious questions as to the justiciability of Plaintiffs' claim. No challenge is made to justi-

---

**3.** Section 4956 provides that requests for subdivision approval should be reviewed by a municipal reviewing authority. 30 M.R.S.A. § 4956(2)(A). The guidelines for such a review are set forth in subpart (3)(A–M) and include considerations of water and air pollution, soil erosion, the availability of water, transportation and sewage, the extent to which the proposed construction will conform to surrounding aesthetics and the subdivider's financial and technical capacity to meet the applicable standards. *Id.*

ciability either in terms of standing, existence of an actual case and controversy, or ripeness of the claim asserted by the Plaintiffs. Since, however, justiciability is an essential element of the exercise of the Court's jurisdiction, *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975), it "is the threshold question in every federal case, *determining the power of the court to entertain the suit."* *Id.* (emphasis added). It is the duty of the Court to see that its jurisdiction is not exceeded. *See City of Kenosha v. Bruno,* 412 U.S. 507, 511, 93 S.Ct. 2222, 2225, 37 L.Ed.2d 109 (1973). On consideration of principles of justiciability articulated in four decisions of the United States Supreme Court, this Court is satisfied that this case, on the pleadings and the present record, does not present a justiciable case or controversy which is ripe for decision.

## I.

The first of these cases is *United Public Workers of America v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). There, certain employees of the Executive Branch of the Federal Government sued, seeking an injunction against members of the Civil Service Commission prohibiting enforcement against the employees of § 9(a) of the Hatch Act, 18 U.S.C. Supp. V § 61h. The pertinent statute forbade such employees from taking "any active part in political management or in political campaigns." The plaintiffs also sought a declaratory judgment of the unconstitutionality of the Hatch Act. However, the plaintiffs did not allege that they had in fact violated the Hatch Act or that they actually were threatened with any disciplinary action as a result of its provisions. They alleged only that they desired to engage in acts of political management and in the conduct of political campaigns and that they were prevented from doing so by fear of dismissal from federal employment. The Court observed, in respect to the plaintiff employees so situated,

As is well known, the federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues, "concrete legal issues, presented in actual cases, not abstractions," are requisite. This is as true of declaratory judgments as any other field. These appellants seem clearly to seek advisory opinions upon broad claims of rights protected by the First, Fifth, Ninth and Tenth Amendments to the Constitution.... Such generality of objection is really an attack on the political expediency of the Hatch Act, not the presentation of legal issues. It is beyond the competence of courts to render such a decision

. . . .

The power of courts, and ultimately of this Court, to pass upon the constitutionality of acts of Congress arises only when the interests of litigants require the use of this judicial authority for their protection against actual interference. A hypothetical threat is not enough. We can only speculate as to the kinds of political activity the appellants desire to engage in or as to the content of their proposed public statements or the circumstances of their publication. It would not accord with judicial responsibility to adjudge, in a manner involving constitutionality, between the freedom of the individual and the requirements of public order except when definite rights appear upon the one side and definite prejudicial interference is upon the other.

*Mitchell,* 330 U.S. at 89–90, 67 S.Ct. at 564 (footnotes omitted). The court went on to note that "[n]o threat of interference by the Commission with rights of these appellants appears beyond that implied by the existence of the law and the regulations." *Id.* at 91, 67 S.Ct. at 565 (citation omitted). On that basis, the court held that the determination of the trial court that the action could be maintained on behalf of employees so positioned was erroneous.

Seven years later, in *International Longshoremen's and Warehousemen's Union v. Boyd,* 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954), the court again articulated justiciability requirements, this time in terms of plaintiff's "standing" to main-

tain an action. There, a labor union and certain of its alien members sued in district court to obtain an injunction against the District Director of Immigration and Naturalization enjoining construction of certain provisions of the Immigration and Nationality Act of 1952 so as to treat aliens domiciled in the continental United States returning from temporary work in Alaska as if they were aliens entering the United States for the first time. Plaintiffs also sought a declaratory judgment to the effect that, so construed, the pertinent provisions of the statute were unconstitutional. The record there made did not show that any sanctions had been set in motion against the plaintiffs or that any occasion for doing so had arisen. In finding that the plaintiffs lacked standing to maintain the suit, the court stated:

> Appellants in effect asked the District Court to rule that a statute the sanctions of which had not been set in motion against individuals on whose behalf relief was sought, because an occasion for doing so had not arisen, would not be applied to them if in the future such a contingency should arise. That is not a lawsuit to enforce a right; *it is an endeavor to obtain a court's assurance that a* statute does not govern hypothetical *situations that may or may not make the challenged statute applicable.* Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function.

*Boyd,* 347 U.S. at 223-4, 74 S.Ct. at 448 (citing *United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1946)) (emphasis added).

As recently as 1973 in the landmark case of *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the court again applied justiciability concepts to deny standing to plaintiffs to obtain resolution of constitutional claims of a "speculative character." *Id.* at 128, 93 S.Ct. at 714. While there upholding the standing of an unmarried pregnant woman who wished to terminate her pregnancy to maintain in a judicial forum a constitutionally-based challenge to the Texas criminal abortion statutes, the court distinguished the posture of other plaintiffs presented by the pleadings as a childless married couple, the woman not being pregnant, who had no desire to have children at the time of the litigation. These latter plaintiffs based their right to challenge the constitutionality of the state statute upon the assertion that they "would want to terminate" any pregnancy that the woman might incur in the future. The court noted "[t]heir alleged injury rests on possible future contraceptive failure, possible future pregnancy, possible future unpreparedness for parenthood, and possible future impairment of health. Any one or more of these several possibilities may not take place and all may not combine." *Id.* The court found that the plaintiffs so postured were not appropriate parties plaintiff to the litigation because "we are not prepared to say that the bare allegation of so indirect an injury is sufficient to present an actual case or controversy." *Id.* (citation omitted).

Finally, in a 1975 case presenting, in respect to one group of plaintiffs, substantially identical facts to those of the case at bar, the United States Supreme Court found the justiciability requirement unsatisfied because "the facts alleged fail to support an actionable causal relationship between ... [the municipality's] zoning practices and petitioner's asserted injury." *Warth v. Seldin,* 422 U.S. 490, 506-7, 95 S.Ct. 2197, 2209, 45 L.Ed.2d 343 (1975). The Court observed:

> A plaintiff who seeks to challenge exclusionary zoning practices must allege specific, concrete facts demonstrating that the challenged practices harm *him,* and that he personally would benefit in a tangible way from the court's intervention. Absent the necessary allegations of demonstrable, particularized injury, there can be no confidence of "a real need to exercise the power of judicial review" or that relief can be framed "no broader than required by the precise

facts to which the court's ruling would be applied."

*Id.* at 508, 95 S.Ct. at 2210 (footnotes and citations omitted); emphasis in original).

■ These Plaintiffs have never at any time submitted an application to the Planning Board of the Town of Ogunquit, or any other official agency or officer of the Town, for any required official approval of any prospective utilization of the real estate subject to the option. Thus, the claim which they seek to have determined in this litigation, that is, the constitutionality of the moratoria ordinances of the Town of Ogunquit in the face of the provisions of 30 M.R.S.A. § 4956, raises only the most speculative and ephemeral possibilities of actual injury to them as of this point in time. This Court is asked to adjudicate the constitutionality of an ordinance as applied to an application for official approval of a subdivision or development plan, the details of which are not yet known to the municipality. In addition, the Court would be required to assume that the officials to whom any such request was presented would deny that application. Even if that assumption were appropriate, there would be no basis upon which this Court could definitively determine upon what basis the municipal officials might act in denying the application. Seen in this context the present uncertainty of the Plaintiffs' posture is one "that should be subject to further negotiation with the administrators before resort to adjudication." 13 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3532 at 247 (1975).

In the absence of any denial of any application submitted by the Plaintiffs by the municipal officers there cannot be said to be even disagreement on a specific proposal, much less any concrete "controversy." Even were the Court to treat Plaintiffs' uncertainty as disagreement, it could not properly be viewed as a judicially cognizable "controversy" which is ripe for interposition of the authority of the Court. No "definite prejudicial interference" is shown as a matter of fact. *Mitchell,* 330 U.S. at 90, 67 S.Ct. at 564. There is not even any

*threat* of interference with the Plaintiffs' rights except as it may be implied from the existence of the moratoria ordinances. *Id.* at 91, 67 S.Ct. at 565. The adjudication Plaintiff would have the Court venture upon is "too remote and abstract an inquiry for the proper exercise of the judicial function." *Boyd,* 347 U.S. at 224, 74 S.Ct. at 448. The alleged denial of Plaintiff's rights has yet to materialize. The supposition that it will do so rests upon possible future filing of an application with the municipal officers, possible future denial of the application, and ultimately the possibility that such denial, if it in fact occurs, will be based upon other than adequate grounds for the denial under state law. *See Roe v. Wade,* 410 U.S. at 128, 93 S.Ct. at 714. On this record the Plaintiffs ask the Court to rule that the provisions of the moratorium ordinance, which have not yet been specifically applied to Plaintiffs' project, would be applied in such a manner as to violate their rights in the future if such a series of contingencies should arise. *Seldin,* 422 U.S. 505–6, 95 S.Ct. at 2208–09; *see Boyd,* 347 U.S. at 224, 74 S.Ct. at 448. Hence, there is not an actual case and controversy which is ripe for decision by an exercise of judicial authority. *Seldin,* 422 U.S. at 506–7, 95 S.Ct. at 2209.

II.

■ Also to be considered is that the Plaintiffs' claim is in reality a challenge to the constitutionality of the municipal moratoria ordinances. This is a matter which is very far from being free of doubt under existing state decisional law. *Compare Thomas v. Zoning Board of Appeals of Bangor,* 381 A.2d 643 (Me.1978) *with Cardinali v. Planning Board of Lebanon,* 373 A.2d 251 (Me.1977); *see also Littlefield v. Inhabitants of Town of Lyman,* 447 A.2d 1231 (Me.1982). The interpretation and application of 1 M.R.S.A. § 302 (1979) by the state court, possibly in tandem with adoption of a "vested rights" theory, *see Littlefield,* 447 A.2d at 1233, n. 2, holds forth the prospect that a state decisional process on any state of facts that might materialize in the future would obviate the need to reach

any federal constitutional issue. This circumstance alone is sufficient justification for the district court to "exercise its wise discretion by staying its hand." *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941).[4]

Of like significance is the fact that the adjudication of Plaintiffs' claim will inject the federal judicial authority into proceedings of the municipality's principal legislative body, and its administrative appendages, which involve the formulation of the most complex and difficult questions of local public policy. *See* 30 M.R.S.A. § 4956(3)(A) through (M). Courts are not fitted with any particular expertise to determine such policy questions especially where the factual predicate for resolution of them is entirely absent from the record. In such circumstance this Court should abstain from any uninformed and unnecessary intermeddling in local political affairs. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

For the foregoing reasons, the Court holds that these Plaintiffs present no present claims arising out of a justiciable controversy and that, in any event, the Court should abstain in this matter on the record that presently exists. Accordingly, the Motion for Temporary Restraining Order is *DENIED* and the Plaintiffs' complaint is hereby DISMISSED.

So ORDERED.

---

**4.** Where the state law at issue is "fairly subject to an interpretation which will render unnecessary or [will] substantially modify the federal constitutional question ... abstention may be required in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication"... *Babbitt v. Farm Workers*, 442 U.S. 289, 306, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1978) (citations omitted).