**Jesse RUNKLE, Individually and on Behalf of a class of similarly situated individuals, Plaintiff,**

v.

**Walter COHEN, Individually and as Secretary of the Dept. of Public Welfare, Comm. of Pa., Defendant.**

Civ. A. No. 85–1512.

United States District Court, M.D. Pennsylvania.

Oct. 2, 1986.

Marc G. Tarlow, William G. Baughman, York, Pa., Michael D. Fishbein, Levin & Fishbein, Philadelphia, Pa., for plaintiff.

Joel M. Ressler, Ellis M. Saull, Dist. Attys. Gen., Harrisburg, Pa., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

*Introduction*

Plaintiff, Jesse Runkle, initiated this action challenging the constitutionality of the procedures employed by the Pennsylvania Department of Public Welfare in its administration of the Tax Intercept Program. Plaintiff complains the procedures used by defendant violate due process on the grounds that they do not provide for adequate notice or a hearing. On this basis, plaintiff seeks compensatory and injunctive relief. In addition, plaintiff moves for class action certification. Defendant Cohen has moved to dismiss the complaint on the grounds that plaintiff lacks standing to pursue this action. For the reasons set forth below, we agree with defendant and will dismiss the complaint and deny the motion for class action certification.

*Background*

Title IV–D of the Social Security Act of 1975 was enacted to improve state programs for establishing paternity and collecting support for children getting AFDC [aid to family and dependent children] pay-

ments. S.Rep. No. 1356, 93rd Cong., 2nd Sess., *reprinted in U.S. Code Cong. & Ad. News* 8133, 8146 (1974). Title IV–D and its implementing regulations provide for a federal program through which states notify the Secretary of the Treasury of individuals who are delinquent in paying child support. The program authorizes the Secretary to intercept tax refunds payable to such persons and directs the Secretary to remit to the defendant, in discharge of the delinquent's obligation to reimburse the state for AFDC payments.

In Pennsylvania, the intercept program is operated by the Department of Public Welfare ("DPW"). Each year the DPW prepares an instructional memorandum to advise the county courts of the procedures to be used for the tax refund intercept program during the upcoming year. Prior to 1985, the DPW employed the following procedures:

> Absent parents must receive a written advance notice before their names are submitted to the IRS for collection by Federal tax offset. This Pre-Offset Notice affords the absent parents the opportunity to contact the appropriate DRS [domestic relation section] if they have questions, want to report an error, or want to pay past due support to avoid offset of the tax refund.

As a result of several successful challenges to the Tax Intercept Program on due process grounds, the DPW issued new guidelines in 1985. Under the new procedures, the individual's rights were expanded to include the right to a formal administrative hearing and the right to appeal an adverse decision to the appropriate court of common pleas.

In 1983 and 1984, plaintiff's tax refunds were intercepted by the Internal Revenue Service after receiving a notice of delinquency. Believing that the interceptions were the result of an error by the Commonwealth of Pennsylvania, he unsuccessfully sought a refund from the DPW. Plaintiff then brought this action asserting that his due process rights were violated by the interceptions. Plaintiff, however, has not been subjected to the intercept program since it was modified in 1985. It is his contention that despite the modifications, the intercept program continues to violate due process, entitling him and the other members of the class to relief.

*Discussion*

Plaintiff brought this suit seeking injunctive relief and monetary damages. However, in a § 1983 action brought against a state [1] "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, Ex Parte Young, supra, and may not include a retroactive award which requires the payment of funds from the state treasury...." *Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662, 681 (1974); *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). Thus, the only issue before us is whether plaintiff is entitled to prospective injunctive relief.

Defendant contends that plaintiff is not entitled to relief because the procedures under which his tax refunds were intercepted are no longer in effect. Defendant further argues that plaintiff lacks standing to contest the new procedures since they have never been applied to him. Plaintiff, on the other hand, insists upon labelling defendant's motion to dismiss as a motion to dismiss for mootness. Because we believe the issues in this case turn on the question of plaintiff's standing, we decline to reach that issue.

"In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 354 (1975). From a constitutional perspective, standing encompasses a question of justiciability, that is, whether the plaintiff has alleged a case or controversy under Article III of the Constitution of the United States. In order to make this

---

**1.** Although this action is brought against Walter Cohen both as an individual and as the Secretary of DPW, plaintiff appears to be only challenging the conduct of the Commonwealth of Pennsylvania.

determination, we must consider whether plaintiff has:

"alleged such a personal stake in the outcome of the controversy" as to warrant *his* invocation of federal court jurisdiction and to justify· exercise of the court's remedial powers on his behalf.... A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threatened or actual injury from the putatively illegal action...."

*Id.* (emphasis in original; citations omitted). Further, the injury referred to cannot be abstract. "The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675, 684 (1983).

In *Lyons,* the Supreme Court held that the plaintiff failed to allege a case or controversy that would justify equitable relief. There Lyons was injured when police officers, pursuant to department policy, applied a chokehold to him after he had been stopped for a traffic violation. Lyons applied for a preliminary injunction to enjoin the continued use of the chokeholds. A preliminary injunction was entered by the District Court and affirmed on appeal. After the Supreme Court had granted certiorari, but before the case could be argued, a six month moratorium on use of chokeholds was imposed by the Board of Police Commissioners.

Considering the availability of equitable relief under the changed circumstances, the Supreme Court held that the federal courts had no jurisdiction in the matter. The question of Lyon's standing to seek injunctive relief depended on whether he was likely to suffer future injury from the use of the chokeholds. Concluding that the threat of future injury was purely speculative the Court noted:

That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons stand-

ing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.

*Id.* at 105, 103 S.Ct. at 1667, 75 L.Ed.2d at 686.

■ Applying this analysis, we likewise conclude that plaintiff does not have standing to seek injunctive relief. In the present case, plaintiff complains about procedures which are no longer in force. As in *Lyons,* the fact that plaintiff was injured by the old procedures is not sufficient to provide plaintiff with standing to contest the new ones. Furthermore, there is nothing to indicate that plaintiff is likely to be subjected to the tax intercept program in the future. In this regard, it is a matter of pure speculation that plaintiff may, in the future, fail to pay the support due his dependents, that his checks will be intercepted, and that he will then suffer injury.[2] Such speculation is not sufficient to confer standing upon plaintiff to challenge the new procedures.

Our conclusion is supported by the recent Supreme Court decision in *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). In *Davis,* the plaintiff challenged, *inter alia,* the constitutionality of the Florida civil service statute. Because the statute was modified subsequent to plaintiff's injury, he conceded that the District Court lacked jurisdiction to adjudicate the constitutionality of a state statute where that statute had never been applied to him. Commenting on this issue, the Court noted that, "[t]he Florida Civil Service Statute now in force replaced the statute under which appellee's employment was terminated. As the current state statute was never applied to appellee, he lacks

---

**2.** On the contrary "[w]e assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct

said to be followed by petitioners." *O'Shea v. Littleton,* 414 U.S. 488, 497, 94 S.Ct. 669, 677, 38 L.Ed.2d 674, 684 (1974).

standing to question its constitutionality." [3] *Id.* at 189–90, n. 7, 104 S.Ct. at 3017, n. 7, 82 L.Ed.2d at 146, n. 7 (1984).

 Having concluded that plaintiff has no standing, we turn to the question of class action certification. Consistent with our recent decision in *Appelbaum v. State Farm Mutual Insurance Company*, 109 F.R.D. 661 (M.D. Pa. 1986) we must deny the motion to certify the class. In *Appelbaum* we held that the class cannot be certified if the nominal plaintiff lacks standing and that holding applies with equal force here.

An appropriate order will be issued.

---

**3.** Plaintiff attempts to distinguish *Davis* on the basis that it involved the constitutionality of a statute. This distinction is irrelevant. The critical factor in *Davis* was the fact that the new statute was never applied to the plaintiff and not whether the challenged practice involves a statute or an established regulatory procedure.