**PENNSYLVANIA MORTGAGE BANK-ERS ASSOCIATION, and Consolidated Real Estate Service Co., t/a Cresco Mortgage Service, Plaintiffs,**

v.

**Hon. LeRoy S. ZIMMERMAN, Attorney General of Commonwealth of Pennsylvania, and Independent Regulatory Review Commission, Defendants.**

Civ. A. No. 87–0700.

United States District Court, M.D. Pennsylvania.

June 26, 1987.

David B. Comroe, Robinson, Greenberg & Lipman, Philadelphia, Pa., E. Robert Levy, Levy, Lybeck, Schwartz & Romankow, P.C., Union, N.J., for plaintiffs.

Thomas B. York, Deputy Atty. Gen., Office of Atty. Gen., Harrisburg, Pa., for Leroy S. Zimmerman, et al.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

Defendants, LeRoy S. Zimmerman, Attorney General of the Commonwealth of Pennsylvania, and the Independent Regulatory Review Commission (IRRC), a state agency, have moved to dismiss plaintiffs' complaint. Plaintiffs, Pennsylvania Mortgage Bankers Association and Consolidated Real Estate Service Co., t/a Cresco Mortgage Service (Cresco), allege in this declaratory judgment action that defendants violated their fourteenth amendment rights to equal protection and due process, as well as the contract clause of the federal constitution, in the promulgation of certain regulations dealing with the business conduct of "loan brokers."[1] Pendent state claims are also asserted. Plaintiffs have also moved

---

1. This case was filed in the Eastern District of Pennsylvania but was transferred here on venue grounds upon defendants' motion.

for a preliminary injunction against the enforcement of the regulations. We will grant the motion to dismiss and dismiss the motion for injunctive relief as moot.

II. *Background.*

The complaint sets forth the following allegations which we accept as true for the purposes of defendants' motion. *See Labov v. Lalley*, 809 F.2d 220 (3d Cir.1987). Cresco is a mortgage broker engaged in the business of procuring mortgage loans for residential properties from lenders on behalf of borrowers for a fee. Cresco, like other mortgage brokers, does not itself lend money but may provide other services which include originating and processing the loan application. The plaintiff association is a non-profit corporation, whose members include mortgage brokers, mortgage bankers, and others who may also be engaged in processing mortgage loan applications.

Mortgage rates dropped dramatically in 1986, causing a corresponding increase in the number of mortgage applicants. As a result, those engaged in the mortgage business could not handle the demand. Previously, a mortgage commitment could be made within forty-five days with closing on the residence within thirty days after that. The increased demand extended this time frame, often resulting in mortgage applicants being faced with higher mortgage rates than those quoted to them at the time they applied for the mortgage.

As a result of consumer complaints concerning the higher rates, the Attorney General promulgated the following regulations, in pertinent part, pursuant to his authority under the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201–1, 201–3.1 (Purdon Supp. 1987–88):

### § 305.2. Definitions.

The following words and terms, when used in this chapter, have the following meanings, unless the context clearly indicates otherwise:

. . . .

*Loan broker*—A person, copartnership, association or corporation engaged in providing services for the purpose of procuring or attempting to procure a loan on behalf of a borrower where a fee or other valuable consideration is charged for the services. The term does not include a person, copartnership, association or corporation expressly regulated by a regulatory body or officer of this Commonwealth or of the United States, such as State and nationally chartered banks, savings and loan associations and their regulated subsidiaries.

### § 305.3. General provisions.

(a) With respect to a loan broker, the following shall be considered unfair methods of competition and unfair or deceptive acts or practices:

(1) Employing a devise, scheme or artifice to defraud.

(2) Making false or misleading statements of fact or omitting material facts in order to make a statement not misleading.

(3) Engaging in an act, practice or course of conduct which creates a likelihood of confusion or misunderstanding.

(4) Failing to use due diligence and make reasonable efforts to procure a loan on behalf of a borrower.

(5) Retaining a fee paid by a borrower to the loan broker where a loan is not procured within the time specified by the loan broker at the rate, term and overall cost agreed to by the loan broker and borrower, regardless of an express written agreement to the contrary. This paragraph does not apply if the failure to procure a loan is due solely to the borrower's negligence or outright refusal to provide information specifically requested by the loan broker.

(6) Failing to escrow a fee which is paid by the borrower prior to procuring a loan in an interest bearing account of an institution regulated by the Federal Reserve Board, the Federal Home Loan Bank Board, Comptroller of the Currency or the Pennsylvania Department of Banking.

*(7)* Failing to promptly refund to the borrower an escrowed amount with interest if a loan is not procured as set forth in paragraph (5).

. . . .

#### § 305.4. Waiver of rights.

A waiver of this chapter by a borrower prior to or at the time of entering into an agreement with a loan broker is contrary to public policy and is void. An attempt by a loan broker to have a borrower waive his rights under this chapter shall be deemed to be fraudulent conduct under § 201–2(4)(xvii) of the Unfair Trade Practices and Consumer Protection Law (73 P.S. § 201–2(4)(xvii)).

37 Pa.Code (Annex A) § 305.1 et seq.

Plaintiffs assert in their brief in support of preliminary injunctive relief that a violation of the regulations may subject a broker to an injunction. A broker may also incur a fine of $5,000 if the injunction is violated with an additional fine of $1,000 if the violation is found to be willful.

Plaintiffs attack the regulations on the following grounds. First, the regulations violate equal protection because they apply only to mortgage brokers and not to others engaged in the same business such as mortgage bankers. Second, they violate due process because they are overbroad, vague and arbitrary. Third, they violate the contract clause because they impair the right of brokers and borrowers to contract. Additionally, a separate due process claim is made against the IRRC for its failure to comply with 45 P.S. § 1201 et seq. (Purdon Pamphlet 1987–88), dealing with the "Promulgation of Regulations And Format of Documents," and the Regulatory Review Act, 71 P.S. § 745.1 et seq. (Purdon Pamphlet 1987–88).[2] A state law claim is also set forth against the IRRC, based upon a direct violation of the state statutes underlying the due process claim against it.

**2.** Defendants have objected on eleventh amendment grounds to the naming of the IRRC in the complaint. Plaintiffs concede this was improper and have indicated a willingness to file an amended complaint naming the individual members of the IRRC. Henceforth, this memorandum will treat plaintiffs' claims against the

### III. *Discussion.*

#### A. *The Article III Case or Controversy Requirement*

##### 1. *There Is No Case or Controversy Here Concerning the Due Process Claim Arising From the Overbreadth, Arbitrariness and Vagueness of the Regulations.*

█ We will first discuss an issue not mentioned by any of the parties—whether a case or controversy exists concerning the substance of the regulations as being overbroad, arbitrary and vague.[3] This issue often involves a determination of a party's standing to assert the claim. *See Valley Forge Christian College v. Americans United For Separation of Church and State,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Concerning the declaratory relief sought, the Third Circuit Court of Appeals has stated the following:

> The test for determining whether a declaratory judgment action presents an actual case or controversy was first articulated by the Supreme Court in *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461 [463–64], 81 L.Ed. 617 (1937):
>
>> The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.
>
> [Citations omitted]. "Plaintiffs in the federal courts 'must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction.'" *O'Shea v. Littleton,* 414 U.S. 488, 493, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) (quoting *Linda R.S. v. Richard D.,* 410

IRRC as against its members rather than as against the IRRC itself.

**3.** We may do so on our own motion. *See In re President's Commission On Organized Crime Subpoena of Scarfo,* 783 F.2d 370 (3d Cir.1986).

U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973)).

*Luis v. Dennis,* 751 F.2d 604, 607 (3d Cir. 1984) (brackets in original).

In *Luis,* the governor of the Virgin Islands had filed a declaratory judgment action contesting the constitutionality of a measure passed by the Virgin Island legislature, modifying the way the legislature confirmed the governor's executive office appointees. Applying the above standard, the court concluded that there was no case or controversy since, among other things, the governor at the time he filed his lawsuit did not have any nominees before the legislature for approval nor was one contemplated at the time. There was a threatened injury but it was not "real or immediate" since several contingencies could happen to prevent the legislation from having an effect upon the governor's choices.

Of particular significance to plaintiffs' standing here is the response of the court to the governor's argument that a case or controversy arose at the moment the legislation was enacted following his unsuccessful veto. The governor asserted that his consideration of potential nominees would be "adversely affected" by the mere existence of the legislation. Rejecting this argument, the court stated:

> We find this alleged harm too speculative to permit adjudication by a federal court. The Governor has made no attempt to particularize the elements of his asserted injury. Yet it is difficult for us to see how his appointment powers are in any way chilled by the requirements of the Act. We are powerless to sustain jurisdiction on the basis of mere conjecture. "Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context

of a concrete case involves too remote and abstract an injury for the proper exercise of the judicial function." *International Longshoremen's Union v. Boyd,* 347 U.S. 222, 224, 74 S.Ct. 447, 448, 98 L.Ed. 650 (1954).

*Id.* at 608.

The same analysis applies here. Plaintiffs do not allege that Cresco, or any other member of the association, have actually been subjected to scrutiny under the regulations for their handling of a brokerage transaction, or have been threatened with any action pursuant to the regulations. No claim is made that Cresco or any other loan broker has been subject to an injunction or fine. In fact, neither Cresco nor any other member of the Association may ever be subject to sanction or the threat of sanction by the Commonwealth. Under these circumstances, neither plaintiff has standing to attack section 305.3(a) on due process grounds,[4] and if we were to consider plaintiffs' claims, we would merely be issuing "an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 607.[5]

■ Plaintiffs may also be seeking relief directly under 42 U.S.C. § 1983 since they seek money damages in addition to declaratory and injunctive relief. This claim must fail as well under the two-pronged standing test set out in *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

First, a federal court must determine whether a plaintiff has "suffered 'some threatened or actual injury resulting from the putatively illegal action,'" *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205 (quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973)), by the defendant. Second, if the federal court determines

---

**4.** When certain conditions are met, associations have standing to sue on behalf of their members. *International Union, United Automobile, Aerospace And Agricultural Implement Workers of America v. Brock,* — U.S. —, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986). The Association has no standing to make a claim for damages, *id.,* but since it also seeks declaratory relief, we conclude it has standing on behalf of both mortgage brokers and mortgage bankers to the ex-

tent they have standing to sue in their own right for such relief.

**5.** We believe the same result would follow if plaintiffs' claims were examined under an alternative theory of ripeness, a nonconstitutional consideration involved in the determination of whether a federal court should accept jurisdiction over a dispute. *See Wilmac Corp. v. Bowen,* 811 F.2d 809 (3d Cir.1987); *A.O. Smith Corp. v. FTC,* 530 F.2d 515 (3d Cir.1976).

that the plaintiff has suffered such injury, the court must then determine whether non-constitutional, prudential limitations dictate that the court not exercise jurisdiction.

*Sullivan v. City of Pittsburgh,* 811 F.2d 171, 176 (3d Cir.1987).

Plaintiffs have, as noted, suffered no actual injury from section 305.3(a). The Commonwealth has not enjoined any of their practices nor have they been fined. Nor has there been any threat of application. There is only the possibility of enforcement—as with any validly existing law or regulation. We are therefore not presented with the "concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Harrisburg Hospital v. Thornburgh,* 616 F.Supp. 699, 702–03 (M.D.Pa. 1985) (quoting *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595, 610 (1978)), aff'd without opinion, 791 F.2d 918 (3d Cir.1986). *See also Davis v. Scherer,* 468 U.S. 183, 189–90 n. 7, 104 S.Ct. 3012, 3017 n. 7, 82 L.Ed.2d 139, 146 n. 7 (1984); *Runkle v. Cohen,* 666 F.Supp. 700 (M.D.Pa.1986) (Caldwell, J.).

### 2. *Plaintiffs Have Standing to Raise the Remaining Due Process Claim and Equal Protection Claim.*

■ Plaintiffs have alleged sufficient threatened or actual economic injury to have standing to assert most of their remaining claims except for certain portions of the contract clause claim and the claim set forth in Count Six, as will be discussed below. Section 305.3(a)(6) requires mortgage brokers to escrow fees paid by borrowers until the loan is procured. Plaintiffs allege economic harm resulting from this section because it puts brokers at a disadvantage relative to mortgage bankers which are not required to escrow such fees. Plaintiffs also claim brokers will have to use their own money to pay the fees required by bankers when forwarding loan applications since the borrowers' money will be in escrow. This economic harm is sufficient to confer standing upon plaintiffs to challenge the defendant Attorney General on equal protection grounds for enacting the escrow regulation and the members of the IRRC on due process grounds for giving their approval. *See Harrisburg Hospital, supra.*

### B. *The Regulations Do Not Violate Equal Protection.*

■ Plaintiffs argue that mortgage brokers are denied equal protection because they are subject to the regulations while others involved in the same business, such as mortgage bankers, are not. Recognizing that the standard to be applied in cases involving only economic interests is one of rationality, *see Hancock Industries v. Schaeffer,* 811 F.2d 225 (3d Cir.1987), plaintiffs claim that such a distinction is arbitrary. They cite *Morey v. Doud,* 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957) and *American Trust Co., Inc. v. South Carolina State Board of Bank Control,* 381 F.Supp. 313 (D.S.C.1974) (following *Morey* ) in their support.

*Morey* would have been persuasive authority for plaintiffs. Unfortunately, it was overruled by *City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). There, in reversing a court of appeals decision which had relied upon *Morey* to invalidate a New Orleans ordinance, the Supreme Court stated:

Actually, the reliance on the statute's potential irrationality in *Morey v Doud,* as the dissenters in that case correctly pointed out, see 354 US, at 474–475, 1 L Ed 2d 1485, 77 S Ct 1344 [at 1354–1355] (Frankfurter, J., joined by Harlan, J., dissenting), was a needlessly intrusive judicial infringement on the State's legislative powers, and we have concluded that the equal protection analysis employed in that opinion should no longer be followed. *Morey* was the only case in the last half century to invalidate a wholly economic regulation solely on equal protection grounds, and we are now satisfied that the decision was erroneous. *Morey* is, as appellee and the Court of Appeals properly recognized, essentially

indistinguishable from this case, but the decision so far departs from proper equal protection analysis in cases of exclusively economic regulation, that it should be, and it is, overruled.

*Id.* at 306, 96 S.Ct. at 2518, 49 L.Ed.2d at 518–19.

Plaintiffs do not argue that the regulations are not rationally related to a legitimate state purpose. They argue only that it is irrational to subject mortgage brokers to them and not others similarly situated. In these circumstances, *Murillo v. Bambrick,* 681 F.2d 898 (3d Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982), controls the disposition of plaintiffs' claim. In *Murillo,* plaintiff brought a class action suit challenging a New Jersey statute and court rule requiring a higher filing fee for divorce cases than for other civil suits. The district court had concluded that equal protection had been violated because, among other things, the state had failed to explain why matrimonial litigants had been singled out from among other litigants for a higher fee. Commenting upon this reasoning, the court of appeals stated:

> The district court's protestation that the State "failed adequately to explain why matrimonial litigants alone had been singled out" when other groups of litigants—such as "[c]lass actions, actions involving minors and incompetents, [and] probate and adoption matters"—require extra judicial scrutiny, 508 F.Supp. [830] at 837 n. 11, misses the mark. It is well established that "a legislature 'may implement [its] program step by step, ... adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations.'" [*State of Minn. v.*] *Clover Leaf Creamery Co., supra,* 449 U.S. [456] at 466, 101 S.Ct. [715] at 725 [66 L.Ed.2d 659] (quoting *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976)); *see also Williamson v. Lee Optical Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563

(1955); *Railway Express Agency, Inc. v. New York,* 336 U.S. 106, 110, 69 S.Ct. 463, 465, 93 L.Ed. 533 (1949). Under this doctrine, New Jersey need not have adopted a trial fee system in other areas, such as class actions, in order to preserve the constitutionality of its supplemental divorce fee.

*Id.* at 909 n. 21 (brackets in original).

Accordingly, the regulations in the instant case do not violate equal protection simply because they could have included in their scope, but did not, other entities which process mortgage loan applications.

### C. Plaintiffs Have Failed to Set Forth A Due Process Claim Against the Members of the IRRC.

■ Plaintiffs assert that the members of the IRRC violated the mortgage brokers' right to due process by failing to comply with the Regulatory Review Act. 71 P.S. § 745.1 *et seq.* (Purdon Pamphlet 1987–88).[6]

The fourteenth amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law...." U.S. Const. Amend. XIV, § 1. Accordingly, we must determine if Cresco has been deprived of a liberty or property interest. Plaintiff Cresco contends that the members of the IRRC deprived it of its property interests in fees which it will no longer be able to charge borrowers and for the use of money it will have to hold in escrow. Cresco also set forth what we perceive to be a liberty interest; that it will be "otherwise restrained in its business activities out of fear of violating the overly broad provisions of the regulations related to 'disclosure' and 'due diligence.'" (plaintiffs' brief in opposition to the motion to dismiss at p. 9).

These interests are not sufficient to subject the members' action to due process analysis. As shown below, the IRRC did not promulgate the regulations. It merely reviewed them or, in the plaintiffs' view,

---

**6.** Exhibit B, attached to the complaint, indicates that the IRRC did comply with the Act. Plaintiffs assert that the compliance was superficial and conclusional. We will accept for the purposes of this motion plaintiffs' position that the Act was not complied with.

failed to review them, in accordance with the Regulatory Review Act. Plaintiffs have therefore only been indirectly affected by the IRRC's action, and it is well established that the due process clause does not apply to the indirect, adverse effects of governmental action. *See O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980); *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980).

In the instant case, if plaintiffs are to assert a property interest, it must arise from the IRRC's enabling legislation. In other words, the Regulatory Review Act must confer some right directly upon mortgage brokers. As stated by the Supreme Court in *Board of Regents v. Roth,* 408 U.S. 564, 577–78, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972) (brackets added), property interests:

> are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in *Goldberg v. Kelly,* [397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)], had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them....

We must therefore look to the statute to determine if it creates a property interest in mortgage brokers. Defendants point to the following language from the statute in asserting that the law creates no constitutionally protected interests.

> This act is intended to provide a method of oversight and review of regulations issued by executive agencies to assist the Governor and the General Assembly in their supervisory and oversight functions and it is not intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the Commonwealth, its agencies, officers or any person.

71 P.S. § 745.2.

We cannot accept this language as being dispositive of whether the statute creates a property right. Nevertheless, as defendants further point out, the substantive provisions indicate that the Act was not intended to confer a benefit upon individuals or businesses. Rather, it was intended, as the above-quoted language from the "Legislative intent" section of the statute accurately asserts, to provide assistance to the Governor and the General Assembly in overseeing administrative agencies. Thus, the IRRC must make findings concerning the impact of a regulation on prices of goods and services, productivity or competition, the public interest and, significantly, whether the regulation represents a policy decision so substantial that it requires legislative review. 71 P.S. § 745.5. These are all considerations, among others set forth in section 745.5, which affect society generally. Moreover, the IRRC can only review and make recommendations to the agency and, in turn the Governor, concerning regulations. *Id.* at 745.7. Ultimately, the General Assembly decides whether regulations will be implemented. *Id.* The IRRC thus clearly has only an advisory role for the legislative process and no where does the legislation indicate an intent to confer a direct benefit upon mortgage brokers. *See Harrisburg Hospital, supra.*

Plaintiffs complain that they had no opportunity to comment upon the proposed regulations. But whether this right arises from the Commonwealth Documents Law, 45 P.S. § 1201(4), or from the Regulatory Review Act,[7] plaintiffs still have not asserted a violation of a constitutional right. These statutory provisions merely recognize the importance that information submitted by the public can have for the rulemaking process. In *Harrisburg Hospital, supra,* plaintiff health care providers had the statutory right to appear and testify against a competitor's request for approval

---

**7.** Section 745.12(a) provides, in material part, as follows: "The commission shall act as a clearinghouse for complaints, comments and other input from members of the General Assembly and from the public regarding regulations, proposed regulations and administrative procedures."

to expand its services. Nevertheless, as we noted there "a person may be an important or even critical witness, but this does not give him a constitutional right to testify." 616 F.Supp. at 711. In the instant case, mortgage brokers do not even have the right to appear at a hearing. The Commonwealth Documents Law provides only that an interested person may make a written comment, 45 P.S. § 1201(4), and that the agency may hold a hearing if it believes it is appropriate.[8] *Id.*, at § 1202. The Regulatory Review Act provision is similar, requiring the IRRC to act only as a clearinghouse for comments from the public. *See* note 7, *supra*.

Further, no liberty interest is implicated here. While the meaning of liberty as encompassed by the fourteenth amendment must be broad indeed, *see Roth, supra*, 408 U.S. at 572, 92 S.Ct. at 2707, 33 L.Ed.2d at 558, and certainly includes the right to contract and engage in an occupation, *id.*, the Regulatory Review Act confers no liberty interest upon mortgage brokers. The statute creates no legitimate claim of entitlement to have the IRRC follow its statutory duty. *See Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Nor can we say that the mere failure of the members of the IRRC to comply with the Act has impaired any other liberty interest independent of the statute. The due process clause "is not a catch-all provision designed to promote the interest of society generally in the obedience of its laws." *Harrisburg Hospital, supra*, 616 F.Supp. at 712 (quoting *Three Rivers Cablevision, Inc. v. City of Pittsburgh*, 502 F.Supp. 1118, 1128 (W.D.Pa. 1980)).

**D. *The Regulations Do Not Violate the Contract Clause.***

Plaintiffs claim that the regulations violate the contract clause provision of the Constitution in several ways. First, they assert that the regulations abolish "any loan agreements in existence at the time [they] went into effect." (plaintiffs' brief in support of the motion for preliminary injunction at p. 15) (brackets added). We have examined the regulations, however, and cannot discover any provision having such an effect.

Second, plaintiffs assert the regulations are deficient on the basis of their retroactivity. This argument falters on the standing issue. The regulations do not provide that they shall apply retroactively. Additionally, plaintiffs' argument is made conditionally, speaking about what would happen if the regulations were applied retroactively. Defendants point out that plaintiffs have not argued any actual retroactive application although defendants do assert that the regulations would be valid if applied retroactively. Since plaintiffs have not alleged any retroactive application, in accord with our standing discussion above, we conclude they have no standing to contest this issue.

Third, plaintiffs specifically attack Section 305.4. That section, provides, in part, that: "An attempt by a loan broker to have a borrower waive his rights under this chapter shall be deemed to be fraudulent conduct...." Plaintiffs assert that borrowers and brokers should be entitled to enter into any contract they wish as long as borrowers knowingly and intelligently waive any rights under the law.[9] Plaintiffs claim this section impairs their right to do so.

This argument borders on the frivolous. Plaintiffs do not assert a retroactive application in this context. They argue that a state cannot prospectively confer non-waivable rights upon borrowers. The short answer is that the contract clause does not apply to prospective state action. *See Redding v. Texaco, Inc.*, 598 F.2d 513 (9th Cir. 1979); *Maryland State Teachers Ass'n,*

---

8. Moreover, the Law provides that the promulgating agency can dispense with obtaining public comments. *See* 45 P.S. §§ 1203, 1204.

9. Plaintiffs cite *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This reliance is misplaced. Any state could constitutionally forbid the waiver of rights by statute. That is the situation here; not the situation in *Miranda* itself.

*Inc. v. Hughes,* 594 F.Supp. 1353 (D.Md. 1984).

### E. *Count Six Fails For Lack of Standing.*

Count Six sets forth the following allegations:

36. Upon information and belief, defendants have interpreted 37 Penn Code Section 305 as applying to mortgage bankers.

37. The defendants are arbitrarily and unreasonably applying the statute to conduct and entities not expressly regulated thereby.

Defendants assert that plaintiffs have failed to set forth the claim with the factual specificity required by the Third Circuit in civil rights actions. *See, e.g., Darr v. Wolfe,* 767 F.2d 79 (3d Cir.1985).

 We agree with defendants that the allegations do not meet the above standard. While it is true that some specific conduct has been set forth in the complaint such as the promulgation of the regulations, no facts have been alleged concerning when and how the regulations actually came to be applied in a specific instance to mortgage bankers. Ordinarily, we would grant leave to amend Count Six but it fails upon a more crucial ground, the standing issue discussed above. Paragraph 36 alleges that defendants "have interpreted" the regulations "as applying to mortgage bankers." This allegation could mean that the Attorney General intends to apply the regulations in an appropriate situation to a mortgage banker, but has not done so yet. If so, plaintiffs are requesting pre-enforcement review of the regulations, a claim they would not have standing to assert. Paragraph 37 does not cure the deficiency. It ambiguously talks about the defendants "applying the [regulations] to conduct and entities not expressly regulated" by them. This count will be dismissed.

### F. *The Pendent State Claim Will Be Transferred.*

Count Five sets forth a pendent state claim against the members of the IRRC. Since it is the only remaining claim, it will be transferred to the Commonwealth Court of Pennsylvania. *See Braderman v. Pennsylvania Housing Finance Agency,* 610 F.Supp. 1069 (M.D.Pa.1985).

We will issue an appropriate order.

### ORDER

AND NOW, this 26th day of June, 1987, upon consideration of defendants' motion to dismiss, it is ordered that:

1. Plaintiffs' complaint, with the exception of Count Five, is dismissed.

2. Count Five, the pendent state claim, is hereby transferred to the Commonwealth Court of Pennsylvania.

3. The motion for preliminary injunction is dismissed as moot.

4. The Clerk of Court shall close this file.