**Goudyloch E. DYER et al.,
Plaintiffs,**

v.

**W. Robert BLAIR, Speaker of the Illinois House of Representatives,
Defendant.**

**No. 73 C 1183.**

United States District Court,
N. D. Illinois, E. D.

May 21, 1974.
June 5, 1974.

Roger Pascal, Martha M. Jenkins, Joseph R. Lundy, Chicago, Ill., for Goudyloch E. Dyer, Eugenia S. Chapman, Susan Catania, John S. Matijevich.

J. F. Schlafly, Alton, Ill., for amici curiae.

William J. Scott, Atty. Gen. of Illinois, Chicago, Ill., Herbert L. Caplan, Asst. Atty. Gen., Ann Lousin, Springfield, Ill. (of counsel), for W. Robert Blair.

## MEMORANDUM AND ORDER

STEVENS, Circuit Judge, HOFFMAN, Senior District Judge, and PARSONS, District Judge.

STEVENS, Circuit Judge.

In March of 1972, Congress passed a resolution proposing the "Equal Rights Amendment" to the Constitution of the United States and submitted it to the States. This litigation arises out of a dispute between members of the Illinois General Assembly concerning the question whether action which that body, as a whole, has not yet taken would, if taken, constitute "ratification" of the proposed amendment within the meaning of Article V of the United States Constitution.[1] At this juncture of the Illinois legislative process, we are satisfied that the issue which is now presented is not justiciable because it is not ripe for review.

Plaintiffs, duly elected members of the Illinois House of Representatives, brought this action against the Speaker of the House, challenging the constitutionality of Article XIV, Section 4 of the Illinois Constitution of 1970 and House Rule 42 of the Illinois House of Representatives, both of which purport to require a three-fifths majority vote in the House before a federal constitutional amendment can be deemed ratified. Plaintiffs ask us to declare that, as a matter of federal constitutional law, ratification by the Illinois General Assembly is effective when a majority of the membership of each branch of the Legislature votes in favor of ratification; they seek an injunction directing the Speaker to certify House passage of the proposed Equal Rights Amendment since the House voted to ratify by more than a majority (but less than three-fifths) of its membership. A three-judge district court was convened pursuant to 28 U.S.C. § 2284.[2] Oral argument was heard on defendant's Motion to Dis-

---

1. "The Congress, whenever two thirds of both Houses shall deem it necessary, shall propose Amendments to this Constitution, or on the Application of the Legislatures of two thirds of the several States, shall call a Convention for proposing Amendments, which, in either Case, shall be valid to all Intents and Purposes, as Part of this Constitution, when ratified by the Legislatures of three fourths of the several States, or by Conventions in three fourths thereof, as the one or the other Mode of Ratification may be proposed by the Congress; Provided that no Amendment which may be made prior to the Year One thousand eight hundred and eight shall in any Manner affect the first and fourth Clauses in the Ninth Section of the first Article; and that no State, without its Consent, shall be deprived of its equal Suffrage in the Senate."

2. See American Federation of Labor v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873; Petuskey v. Rampton, 431 F.2d 378 (10th Cir. 1970), cert. denied, 401 U.S. 913, 91 S.Ct. 882, 27 L.Ed.2d 812.

miss and plaintiffs' Cross-Motion for Summary Judgment.[3] We grant the Motion to Dismiss and deny the Motion for Summary Judgment.

The undisputed facts can be briefly summarized.

In 1972, the Illinois Senate adopted a resolution providing for the ratification of the Equal Rights Amendment. Presumably that resolution was forwarded to the Illinois House of Representatives, but no action was taken by that body in the 77th Session of the General Assembly. That legislative session having terminated in 1972, the parties agree that the Senate action taken in that session has no legal effect, since both Houses must concur in any effective act of ratification. The ratification process thus was required to begin anew in the 78th Session. In the 78th Session, the process of ratifying the Equal Rights Amendment was initiated in the House of Representatives. As far as the record discloses, no action has been requested of, or taken by, the Senate.[4]

On April 4, 1973, the Illinois House of Representatives voted on its House Joint Resolution No. 14 providing for the ratification of the Equal Rights Amendment; the vote was 95 in favor of, and 72 against, ratification, a ratio which is more than a majority but less than three-fifths of the membership of that body. In compliance with House Rule 42, the defendant refused to certify the ratification resolution as having passed because it was not supported by a three-fifths vote.

The issue which would be presented if, at the same session of the Illinois General Assembly, the Senate should also pass a ratifying resolution by a majority vote, is not now before us. When plaintiffs' counsel was asked at oral argument why we should not await Senate action to determine whether or not there would be occasion for judicial intervention, we were advised, in effect, that the consideration of the matter in the Senate would be influenced by our interpretation of the law.

Defendant argues, we think with force, that if we may intervene at this stage of the Illinois legislative process, we might with equal justification require committees of either House to act only by majority vote when a question relating to the ratification process is at issue. As federal judges we are satisfied that we may not participate in preliminary stages of a State's legislative process.[5]

Whatever the legal significance of a majority vote in favor of ratification of the Equal Rights Amendment by both Houses of the Illinois General Assembly might be, we are now satisfied that we do not have the power to provide the parties with the advisory opinion they seek in this litigation.

The issue which plaintiffs now seek to present is not ripe for review. Unlike the doctrine of standing, which establishes that the plaintiff must have sufficient interest in a case, or the requirement that the controversy must be real and not collusive, the doctrine of ripeness focuses upon the extent to which the controversy has matured at the time of the litigation. In Longshoremen's Union v. Boyd, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650, the Supreme Court refused to adjudicate the constitutionality of a section of the Immigration and Nationality Act of 1952 which

---

3. Subsequent to oral argument, 13 other members of the Illinois House filed a motion for leave to file a brief as *amici curiae* supporting the position of the defendant. The motion is hereby granted.

4. We do not understand plaintiffs to argue that the Senate is not empowered to consider the Equal Rights Amendment until the ratification by the House of Representatives has been certified.

5. Indeed, even when that process is entirely completed, for an entirely different reason, there is a serious question as to whether we could participate in the amending process as requested by plaintiffs. See Coleman v. Miller, 307 U.S. 433, 454–456, 59 S.Ct. 972, 83 L.Ed. 1385, see also concurring opinion by Mr. Justice Black at page 459, 59 S.Ct. 972. This is a question we need not now decide, however.

the District Director of I.N.S. construed so as to treat aliens domiciled in the continental United States returning from work in Alaska as if they were aliens entering the United States for the first time. The plaintiffs were a union and some of its alien members who argued that the purported construction of the statute threatened to violate the property rights of alien fishermen who ordinarily worked in Alaskan waters. Writing for the Court, Justice Frankfurther explained the Court's unwillingness to decide the merits, saying that the case "is not a lawsuit to enforce a right; it is an endeavor to obtain a court's assurance that a statute does not govern hypothetical situations that may or may not make the statute applicable." 347 U.S. at 224, 74 S.Ct. at 448.[6]

The doctrine, then, is one which avoids the decision of an issue which may be mooted before the decision is anything but advisory in character. This is exactly the difficulty with plaintiffs' case. If the Illinois Senate fails to ratify the Equal Rights Amendment before the end of the 78th Session, no controversy will exist. Article V of the United States Constitution requires ratification of amendments by the "Legislatures of three fourths of the several States."[7] The *Legislature* of the State of Illinois has not yet taken any action which is claimed to constitute "ratification" within the meaning of Article V. Until the entire Legislature, including both of its Houses, has acted, the question whether its action, whatever form it may have taken when completed, will constitute "ratification" cannot appropriately be addressed by us.

We hold that the case is not ripe for review. Accordingly, the complaint must be dismissed.

Plaintiffs' Motion for Summary Judgment is denied; defendant's Motion to Dismiss is hereby granted.

6. See also Toilet Goods Association v. Gardner, 387 U.S. 158, 163, 87 S.Ct. 1520, 18 L.Ed.2d 697.

## ON MOTION TO VACATE

JULIUS J. HOFFMAN, Senior District Judge.

This cause came before the Court on plaintiffs' motion to vacate the order of May 21, 1974, dismissing the complaint. Additionally, plaintiffs seek to renew their motion for summary judgment.

The Court is now advised that on May 21, 1974, the Illinois Senate voted on whether to ratify the proposed Equal Rights Amendment to the Constitution of the United States. This measure was presented to the Senate in the form of Senate Joint Resolution 68. The transcript of that proceeding contains the following exchange:

PRESIDENT OF THE SENATE:

"The question is, shall the Senate adopt Senate Joint Resolution 68. Thirty-six votes are required for adoption. Those in favor vote Aye. Those opposed vote No. The voting is open. Have all voted who wish to vote? . . . Take the record. For what purpose does Senator Saperstein arise?

SENATOR SAPERSTEIN:

"I move to postpone consideration.

PRESIDENT OF THE SENATE:

"Senator Saperstein has moved to postpone consideration. All in favor signify by saying Aye. Contrary No. The motion carries. . . . Consideration on Senate Joint Resolution 68 is postponed. . . ." (p. 57 of Exhibit A, Partee Affidavit).

In light of what transpired at that proceeding, the issue presented remains non-justiciable. No controversy can exist until the "Legislature" of the State of Illinois takes action which is claimed to constitute "ratification" within the meaning of Article V. It bears emphasizing that,

7. See n. 1, *supra.*

"[u]ntil the entire Legislature, including both of its Houses, has acted, the question [of] whether its action, whatever form it may have taken when completed, will constitute 'ratification' cannot appropriately be addressed by us." (p. 7, Memorandum and Order of May 21, 1974).

The unofficial vote of the Illinois Senate, the ground upon which this motion has been made, does not, in our opinion, amount to such action.

The case upon which the movants have relied is inapposite. In Adams v. City of Colorado Springs, 308 F.Supp. 1397 (D. Colo. 1970), the court was justifiably concerned with the "irreparable damage" that would befall the plaintiffs should it require them to await completion of the Colorado annexation procedure before proceeding with suit. The court was impressed with the fact that, even if the annexation procedures were declared to be unconstitutional, taxes which had been levied could not thereafter be recovered. Thus, the plaintiffs would have been without remedy if the court had required them to await annexation before proceeding with suit. Here we are concerned with the extent to which the controversy has matured, and more especially, are desirous of avoiding the issuance of an opinion which would be merely advisory in character. See, e. g., Longshoremen's Union v. Boyd, 347 U.S. 222, 224, 74 S.Ct. 447, 98 L.Ed. 650 (1954); United Public Workers v. Mitchell, 330 U.S. 75, 89–91, 67 S.Ct. 556, 91 L.Ed. 754 (1947); Electric Bond Company v. Securities and Exchange Commission, 303 U.S. 419, 443, 58 S.Ct. 678, 82 L.Ed. 936 (1938).

Because we do not view the action taken on Senate Joint Resolution 68 as advancing this litigation beyond the point it occupied on the date on which we rendered our decision, plaintiffs' motion to vacate our order of May 21, 1974 must be denied.

Since the order of May 21 stands as entered, we do not reach that part of plaintiffs' motion which seeks summary judgment.