IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tom Wolf, Governor of the                     :
Commonwealth of Pennsylvania,                 :
and Leigh M. Chapman, Acting                  :
Secretary of the Commonwealth of              :
Pennsylvania,                                 :
                          Petitioners         :
                                              :
            v.                                :    No. 482 M.D. 2022
                                              :    Argued: December 14, 2022
General Assembly of the                       :
Commonwealth of Pennsylvania,                 :
                          Respondent          :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ELLEN CEISLER, Judge
          HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                      FILED: April 17, 2023

        Tom Wolf, former Governor of the Commonwealth of Pennsylvania,
and Leigh M. Chapman, former Acting Secretary of the Commonwealth of
Pennsylvania (collectively, Petitioners), filed a petition for review seeking
declaratory relief and an application for summary relief.[1]  Respondent General
Assembly of the Commonwealth of Pennsylvania (General Assembly) filed
preliminary objections.  Intervenors Senator Joe Pittman, the Pennsylvania Senate
(Senate) Republican Caucus, Representative Bryan D. Cutler, and the Pennsylvania
House (House) Republican Caucus (collectively, Republican Intervenors), also filed

_____
        [1] Following oral argument on this matter, Josh Shapiro was sworn in as Governor, and Al
Schmidt was appointed as Acting Secretary.

preliminary objections. *See* Praecipe to Substitute, 3/6/23; Praecipe to Substitute, 1/19/23. Senator Jay Costa, the Senate Democratic Caucus, State Representative Joanna E. McClinton, the Democratic Caucus of the House (collectively, Democratic Intervenors), and Petitioners oppose the preliminary objections. The General Assembly and Republican Intervenors oppose Petitioners' application for summary relief. We sustain the preliminary objections filed by the General Assembly and Republican Intervenors to the extent they invoke ripeness, dismiss as moot all remaining outstanding preliminary objections and Petitioners' application for summary relief, and dismiss Petitioners' petition for review.[2]

## I. BACKGROUND[3]

Because we write for the parties, we need not reiterate the extensive procedural history. *See Wolf v. Gen. Assembly* (Pa. Cmwlth., 482 M.D. 2022, filed Oct. 26, 2022) (Dumas, J., single-judge op.). Very briefly, Petitioners sought a declaration that Senate Bill No. 106 of 2021 (SB 106) violated article XI, section 1 of the Pennsylvania Constitution and to enjoin the General Assembly from any further action on SB 106. Pet. for Review, 9/23/22, at 25-26; Appl. for Summ. Relief, 9/23/22, ¶ 103.[4]

---

[2] This Court's decision expresses no opinion on the substance of the proposed amendments and neither approves nor disapproves of the proposed amendments. Our jurisprudence distinguishes between (a) whether the *substance* of an amendment passes constitutional muster, and (b) the *procedure* for *amending* the constitution. Our focus is on the latter.

[3] In resolving preliminary objections, we "must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom." *Freemore v. Dep't of Corr.*, 231 A.3d 33, 37 (Pa. Cmwlth. 2020) (*per curiam*) (citation omitted). We may reject "conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Id.* (citation omitted). In addition to the petition for review, we may consider any attached documents or exhibits. *Id.*

[4] Pa. Const. art. XI, § 1. This section states in part:

Amendments to this Constitution may be proposed in the Senate or House of

Petitioners alleged that SB 106 began as a single proposed amendment to article IV, section 4. Subsequently, in December 2021, the House expanded SB 106 to add four amendments. On July 7, 2022, the Senate revised SB 106 to add a fifth amendment, among other modifications.[5] The next day, both chambers voted

Representatives; and if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid; and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; and, if such amendment or amendments shall be approved by a majority of those voting thereon, such amendment or amendments shall become a part of the Constitution; but no amendment or amendments shall be submitted oftener than once in five years. When two or more amendments shall be submitted they shall be voted upon separately.

Pa. Const. art. XI, § 1. Apparently, eleven other states also require passage of a proposed constitutional amendment by at least two legislative sessions. Council of State Gov'ts, The Book of the States 8 (2021). Specifically, these include Delaware, Indiana, Iowa, Massachusetts, Nevada, New York, South Carolina, Tennessee, Vermont, Virginia, and Wisconsin. *Id.*

[5] The initial proposed amendment required candidates for governor to select their running mates for lieutenant governor. The four December 2021 proposed amendments follow. The first proposal was an amendment to section 9 of article III, that would have added "'disapproval of a regulation' to the narrow class of concurrent resolutions that are not required to be 'presented to the Governor' for approval or veto." Pet. for Review, ¶ 13(a). The second proposal was a new amendment at section 21 of article IV, that would have limited "the duration of executive orders or proclamations by the Governor to an executive agency to 21 days unless otherwise extended by concurrent resolution of the General Assembly." *Id.* ¶ 13(b). The third proposal was an amendment to section 1 of article VII, that would have required voters to "present valid identification prior to voting, regardless of voting method." *Id.* ¶ 13(c). This amendment would also have decreased the minimum voting age from 21 years to 18 years of age and decrease the duration of the residency requirement to vote. *Id.* ¶¶ 14-15. The fourth proposal was a new amendment at section 15 to

to pass the modified SB 106.  Pet. for Review, ¶ 47.

Consequently, Petitioners filed a petition for review and application for summary relief.  In relevant part, Petitioners alleged that "[n]either the Senate nor the House entered [the] representatives' 'yea and nay' votes on each proposed amendment in the legislative journals of either house."  *Id.* ¶ 49.  The General Assembly and Republican Intervenors filed preliminary objections.

## II. ISSUES

The preliminary objections filed by the General Assembly and Republican Intervenors generally fall into two categories: non-justiciability and legal insufficiency.  For non-justiciability, Respondent invokes the political question and ripeness doctrines.

## III. DISCUSSION[6]

In support of its assertion that this matter is not ripe for judicial intervention, the General Assembly argues that Petitioners have not alleged any "cognizable and immediate injuries."  General Assembly's Br., 10/11/22, at 17.  In the General Assembly's view, Petitioners improperly ask this Court to opine "on the

---

article VII, that would have authorized the General Assembly to audit elections.  *Id.* ¶ 13(d).  The July 2022 proposed amendment would have added a new section 30 to article I, stating, "[t]his Constitution does not grant the right to taxpayer-funded abortion or any other right relating to abortion."  *Id.* ¶ 36.

[6] "A preliminary objection to the legal sufficiency of a pleading (a demurrer) raises questions of law, and a court must decide whether it is clear from the well-pleaded facts and reasonable inferences from those facts that the claimant has not established a right to relief.  Preliminary objections in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted."  *Yocum v. Pa. Gaming Control Bd.*, 161 A.3d 228, 233-34 (Pa. 2017) (cleaned up).  "Parties may raise questions regarding standing, ripeness, and the political question doctrine by filing preliminary objections to a petition for review filed in the original jurisdiction of the Commonwealth Court, similar to those permitted in a civil action."  *Robinson Twp., Wash. Cnty. v. Com.*, 83 A.3d 901, 917 (Pa. 2013) (citation omitted).

4

proper internal legislative procedure *before*" the next legislative session proposes the required second resolution for a constitutional amendment. *Id.* at 18 (emphasis in original). The General Assembly details a multi-step process for submitting a constitutional amendment for voting by the general public and highlights the omissions of several such steps. *Id.* at 18-20. In the General Assembly's view, because Petitioners have asked this Court to engage in a quixotic "abstract exercise," we should sustain the preliminary objections because Petitioner's claims are unripe. *Id.* at 20-21.[7]

Petitioners counter that the issue is ripe. Pet'rs' Br. in Supp. of Appl. for Summ. Relief & Opp'n to Prelim. Objs., 11/10/22, at 16-17. In their view, the issue as to whether the General Assembly's failure to enter "yea and nay" votes is not an "abstract debate." *Id.* at 17. Petitioners reason that the "single collective 'yea and nay' vote . . . denied information necessary for voters to knowingly exercise their constitutional right to replace representatives who do not share their views." *Id.* at 18. In support, Petitioners primarily rely on *Kremer v. Grant*, 606 A.2d 433 (Pa. 1992), and suggest that because they challenge the General Assembly's "authority to propose that a matter be submitted to [the] electorate as a ballot question," the issue is ripe for disposition. *Id.* at 21-22.[8]

Before discussing the ripeness doctrine, we provide the following background on Pennsylvania's constitutional amendment process. Article XI, section 1 of the Pennsylvania Constitution discusses the procedure for amending the constitution by the General Assembly. Article XI does not address the legislative procedure for proposing amendments, conducting votes, or approving amendments.

---

[7] Republican Intervenors generally raise comparable arguments in support of their substantially similar preliminary objections.

[8] Democratic Intervenors counter with essentially the same arguments.

*Grimaud v. Commonwealth*, 865 A.2d 835, 847 (Pa. 2005). As noted above, article XI requires that "such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon . . . ." Pa. Const. art. XI, § 1. Following two successive passages by the General Assembly, the Secretary of the Commonwealth presents the amendment or amendments to the electorate with a ballot question. *Id.*; Section 201(c) of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, § 201, *as amended*, 25 P.S. § 2621(c); *see also* Section 201.1 of the Election Code, added by the Act of February 19, 1986, P.L. 29, 25 P.S. § 2621.1; Section 605 of the Election Code, 25 P.S. § 2755. If the electorate votes against the amendment (or amendments), then the General Assembly may not submit the amendment or a substantially similar amendment for five years. *Com. ex rel. Margiotti v. Lawrence*, 193 A. 46, 49 (Pa. 1937).[9]

Our courts have often considered challenges to constitutional amendments at the "ballot question" stage, even *after* the electorate has voted on a proposed constitutional amendment. *See, e.g.*, *League of Women Voters v. DeGraffenreid*, 265 A.3d 207, 210 (Pa. 2021); *Bergdoll v. Kane*, 731 A.2d 1261, 1266 (Pa. 1999); *Kremer*, 606 A.2d at 434. For example, in *Bergdoll*, prior to the general election, the petitioners sought to enjoin the publication of a ballot question amending the constitution. *Bergdoll*, 731 A.2d at 1263. This Court denied injunctive

_____

[9] The *Margiotti* Court construed article XI's equivalent article in the 1874 constitution. The Court apparently distinguished between "proposing" an amendment by the General Assembly and "submission" of an amendment to the electorate. *Compare Margiotti*, 193 A. at 49 (explaining that "the electors intended to permit the submission of amendments as frequently as they properly passed through the prescribed steps with the sole prohibition that after an amendment had been once submitted, it or one substantially related could not again be submitted until a period of five years has elapsed"), *with id.* (discussing the General Assembly's proposal of an amendment in conjunction with its submission to the electorate). We add that the parties did not cite case law construing article XI for the proposition that the "yeas and nays" must be recorded for each distinct amendment in SB 106.

6

relief, and the "electorate voted in favor of the ballot question on election day." *Id.* at 1264, 1266. Meanwhile, the petitioners amended their complaint to challenge both "the ballot question and its passage." *Id.* at 1266. This Court "declared the vote on the ballot question null and void . . . ." *Id.* at 1267. Our Supreme Court affirmed, agreeing with this Court that the ballot question violated article XI, section 1. *Id.* at 1270.

Similarly, in *DeGraffenreid*, also prior to the general election, the Secretary published a ballot question regarding a proposed constitutional amendment. *DeGraffenreid*, 265 A.3d at 212. The petitioners filed suit in this Court, seeking to enjoin the "tabulation and certification of the votes" on the proposed amendment. *Id.* This Court granted the injunction, and our Supreme Court affirmed. *Id.* Subsequently, the electorate voted in favor of the amendment. *Id.* at 213. The parties cross-moved for relief, and this Court held that the submitted amendment was procedurally unconstitutional and invalidated the electorate's votes. *Id.* Our Supreme Court affirmed, agreeing that the amendment did not comply with the requirements for amending the constitution. *Id.* at 241-42.

In *Kremer*, the General Assembly passed the proposed amendments in 1990, but the Secretary failed to ensure timely newspaper publication. *Kremer*, 606 A.2d at 436-37. Despite the Secretary's apparent non-compliance with article XI, section 1, no party immediately filed suit. Subsequently, the General Assembly passed the amendments again in February 1991, but the Secretary again failed to ensure proper newspaper publication. *Id.* at 437. In March 1991, the petitioners filed for preliminary injunctive relief in this Court, notwithstanding the Secretary's non-compliance in 1990. *Id.* at 435. This Court granted relief, and our Supreme Court affirmed based upon the limited standard of review. *Id.* at 436, 439. The facts in

*Kremer* underscore that despite the executive branch's alleged constitutional violation in 1990, the petitioners were not precluded from suing after the alleged violation in 1991. *See id.* at 435.

In other words, notwithstanding the presentation of the ballot question to the electorate and the electorate's approval, courts have negated votes approving constitutional amendments. *See id.* at 438-39 (reasoning that because "a critical procedural step in the amendment process was modified, if not entirely omitted," article XI compliance was "impossible");[10] *DeGraffenreid*, 265 A.3d at 241-42; *Bergdoll*, 731 A.2d at 1270.

None of these cases, however, addressed the justiciability issue of ripeness. "Justiciability questions are issues of law, over which our standard of review is *de novo* and the scope of review is plenary." *Robinson*, 83 A.3d at 917 (citation omitted). Justiciability of the issue is a prerequisite for any merits analysis. *Id.* The concept of justiciability encompasses the political question, standing, and ripeness doctrines. *Id.* at 916-17.

Ripeness "concerns the timing of a [court's] intervention in litigation." *Phila. Ent. & Dev. Partners, L.P. v. City of Phila.*, 937 A.2d 385, 392 (Pa. 2007) (*Phila. Ent.*) (citation omitted). Ripeness "asks whether an injury that has not yet happened is sufficiently likely to happen," *i.e.*, "whether the harm asserted has matured sufficiently to warrant judicial intervention[.]" *Town of McCandless v. McCandless Police Officers Ass'n*, 901 A.2d 991, 1002 (Pa. 2006) (cleaned up). In sum, ripeness seeks to avoid advisory opinions, *i.e.*, "having our court prematurely

---

[10] The *Kremer* Court did not address whether the issue was ripe after the 1990 passage. We note that Petitioners suggest that the *Kremer* Court addressed the General Assembly's "failure to properly publish amendments after *first* passage." Pet'rs' Br. at 21 (emphasis added). More precisely, as discussed above, the *Kremer* Court's review occurred after the *second* passage of the challenged amendments in 1991. *See Kremer*, 606 A.2d at 437.

8

adjudicate a controversy, and thereby become entangled in resolving an abstract or hypothetical issue, whenever no party has[] yet[] suffered a concrete harm which could be alleviated through appellate review." *Pa. ex rel. Kane v. UPMC*, 129 A.3d 441, 473 (Pa. 2015) (*Kane*); *Rendell v. Pa. State Ethics Comm'n*, 983 A.2d 708, 718 (Pa. 2009); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) (explaining that a "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all" (cleaned up)).

Ripeness also reflects the "concern that relevant facts are not sufficiently developed to permit judicial resolution of the dispute." *Robinson*, 83 A.3d at 917. Framed differently, judicial resources "should be conserved for problems that are real and present or imminent, not squandered on problems that are abstract or hypothetical or remote." *Nieves v. Pa. Bd. of Prob. & Parole*, 983 A.2d 236, 241 (Pa. Cmwlth. 2009) (citation omitted). A court cannot *sua sponte* invoke ripeness. *Rendell*, 983 A.2d at 718. Finally, we must dismiss an unripe claim. *Phila. Ent.*, 937 A.2d at 392.

It does not appear that any Pennsylvania court has addressed ripeness in this context. *See* Robert E. Woodside, Pennsylvania Constitutional Law 554 (1985) (stating "[i]f the court is so inclined, it might refuse to consider the case before the electorate votes on the ground that the issue is not ripe for disposition because the voters might reject the proposal, thus making the issue moot"). But at least one federal court addressed ripeness when resolving a state legislature's ratification of an amendment to the United States Constitution. *Dyer v. Blair*, 390 F. Supp. 1287 (N.D. Ill. 1974). In that case, state house legislators challenged the constitutionality of a state constitution clause and legislative rule requiring ratification of a federal constitutional amendment by a three-fifths, as opposed to a simple, majority vote.

9

*Id.* at 1288. The *Dyer* court held that the issue was "not ripe for review" because if the state legislature failed to ratify the amendment, then no controversy would exist. *Id.* at 1289-90. In other words, the court explained, both houses of the legislature must act before the court would address whether ratification occurred. *Id.* at 1290.

Instantly, this case is unlike cases in which courts have resolved the constitutionality of amendments presented to and voted on by the electorate. This case is different because the General Assembly has not yet voted on and passed the instant amendments for a second time. *Cf. DeGraffenreid*, 265 A.3d at 210; *Bergdoll*, 731 A.2d at 1263; *Kremer*, 606 A.2d at 437. That second passage is a crucial step in the constitutional amendment process. Pa. Const. art. XI, § 1; *see* Woodside, *supra*, at 554; *see also Dyer*, 390 F. Supp. at 1289-90. Because the second passage of SB 106 has not occurred, the Secretary cannot present a ballot question to the electorate. *See* 25 P.S. § 2621(c). The electorate cannot vote without a ballot question. Pa. Const. art. XI, § 1; 25 P.S. § 2621.1. Some, all, or none of these events may or may not come to pass.

For these reasons, Petitioners' claim is premature. Their claim is premature because if we addressed Petitioners' claim but the subsequent General Assembly fails to pass SB 106 a second time, then we have entangled ourselves in an abstract disagreement with no apparent concrete consequences. *See Kane*, 129 A.3d at 473; *Rendell*, 983 A.2d at 718; *see also Dyer*, 390 F. Supp. at 1289-90. In other words, no concrete harm seemingly inures to Petitioners absent successive passage. *See Kane*, 129 A.3d at 473; *Rendell*, 983 A.2d at 718. Indeed, although ripeness was not an apparent issue in *Kremer*, the petitioners successfully challenged the article XI process *despite* the Secretary's failure following the first passage. *See Kremer*, 606 A.2d at 437. Here, Petitioners may challenge the article XI process

10

even after second passage or after the electorate votes in favor of the amendment. *See, e.g.*, *DeGraffenreid*, 265 A.3d at 210.  We decline to squander judicial resources by *assuming* SB 106 will be passed a second time, *i.e.*, before Petitioners' injury has fully matured.  *See Kane*, 129 A.3d at 473; *Nieves*, 983 A.2d at 241.[11]

## IV. CONCLUSION

We emphasize that the subject matter of the amendment or amendments before this Court is irrelevant to our holding.  We only hold that given the present legislative posture of SB 106, Petitioners' claims are not ripe for judicial intervention.  Because their claims are not ripe, we sustain the preliminary objections filed by the General Assembly and Republican Intervenors to the extent they raise ripeness.[12]

_____
LORI A. DUMAS, Judge


Judges Fizzano Cannon and Wallace did not participate in the decision in this case.

---

[11] If every alleged misstep in the constitutional amendment process resulted in a lawsuit, then the potential exists for protracted, piecemeal litigation, which could potentially conflict with election-related deadlines.

[12] Because ripeness is dispositive, we do not address the remaining preliminary objections. We add that the issue of whether Petitioners' claim is ripe for review following second passage is not before this Court.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tom Wolf, Governor of the : 
Commonwealth of Pennsylvania, : 
and Leigh M. Chapman, Acting : 
Secretary of the Commonwealth of : 
Pennsylvania, : 
                    Petitioners : 
                 : 
          v. :   No. 482 M.D. 2022
                   : 
General Assembly of the : 
Commonwealth of Pennsylvania, : 
                    Respondent : 

# **O R D E R**

AND NOW, this 17th day of April, 2023, we sustain the preliminary objections filed by the General Assembly, Senator Joe Pittman, the Pennsylvania Senate Republican Caucus, Representative Bryan D. Cutler, and the Pennsylvania House Republican Caucus to the extent they invoke ripeness, and we dismiss as moot all remaining outstanding preliminary objections. We dismiss as moot the application for summary relief and dismiss the petition for review filed by Tom Wolf, former Governor of the Commonwealth of Pennsylvania, and Leigh M. Chapman, former Acting Secretary of the Commonwealth of Pennsylvania. This Court's decision expresses no opinion on the substance of the proposed amendments and neither approves nor disapproves of the proposed amendments.

                                        _____

                                        LORI A. DUMAS, Judge